COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ERNEST VILLANUEVA, | § | No. 08-06-00208-CR |
| Appellant, | § | Appeal from the |
| v. | § | 83rd District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Pecos County, Texas |
| Appellee. | § | (TC#2664) |
| | § | |

**O P I N I O N**

Ernest Villanueva appeals his conviction for aggravated sexual assault of a child. He was convicted and sentenced by the jury to 50 years in the Institutional Division of the Texas Department of Criminal Justice. He raises four issues on appeal: (1) requesting the appeal be abated so that findings of facts and conclusions of law can be filed; (2) challenging the admission of his confession at trial; (3) whether the confession's probative value outweighed its prejudicial effect; and (4) the denial of his motion for mistrial.

Ernest Villanueva was married to Rachel Rodriguez for eleven and a half years. Rachel had two children from previous relationships, J.G. and John. Ernest and Rachel had one son together, Ernie.

On June 8, 2005, J.G. gave her mother a letter. In the letter, J.G. wrote that Appellant has touched her, and has made her touch his private. After reading the letter, Rachel went to speak with her daughter, and asked her if it was true. J.G. said that, yes, it was true. Rachel went to look for Appellant around the house, but could not find him. She then went and picked up her

son, Ernie, from his godmother's and returned home. When she returned home, she found Appellant hiding behind a trash can. He approached Rachel saying that "he's a sick man."

At some point, Appellant got a large kitchen knife. Appellant ran out the front door with it, and locked himself in his truck. He said he was going to kill himself. When he ran out the door, Rachel had her daughter call the police. While Appellant was locked in the truck, Rachel got a golf club so that she could break the window to open the door, and stop him from killing himself. Appellant unlocked the door before she broke the window. Appellant gave Rachel the knife, got out of the truck, and went inside the house. Appellant went out the backdoor, and sat down in the backyard. When the police arrived, Rachel took them to speak to him.

The officers took him to the Fort Stockton Police Department. Appellant met with an individual from the local mental health/mental retardation office, while at the police department. The record is silent about this meeting other than after speaking with the individual, Appellant was "settled down." Appellant also met with Sergeant William Jackson of the Fort Stockton Police Department. Sergeant Jackson gave Appellant his Miranda Warnings before taking the statement. Appellant initialed each page, and initialed each right under Miranda. He did not request an attorney. He was never handcuffed. This interview started at 9:20 p.m. and lasted until 10:25 p.m. Afterwards, he left with his wife.

In his statement, Appellant admits to having been told he is not under arrest, and he can stop giving the statement at any time. Appellant also was informed of the range of punishment for aggravated assault of a child and indecency with a child. The statement also says that he has not been promised anything for giving his statement, nor has he been deprived of anything such as food, water, sleep, or the use of a bathroom. He states that he is not taking any type of

-2-

medication, and is not under the influence of any type of drug or alcohol.

Appellant first states that he was molested by his older brother as a child. He then confesses that from age five until twelve, he would "make [J.G.] jack me off until I would ejaculate." At the same time, he would touch her vagina by putting his hand underneath her clothing. He stated that this would happen once or twice a week. Appellant also admitted to laying on top of her with an erect penis while he and his daughter were both naked. Appellant stated that he did not remember how many times this occurred, but that it was not more than five times a year. He denies ever penetrating his daughter's vagina either with his finger or his penis. Appellant said these events would occur while his wife would be gone, and the other children were asleep or outside playing. After giving his statement, Appellant left the police station.

J.G. met with Lisa Tarango of the Fort Stockton Police Department on June 8, 2005 as well. J.G. told her that Appellant "had stuck his private inside of her and it was hurting her so badly." Officer Tarango testified that she was the first adult told about this one particular incident. At the Harmony Home, a forensic interview was performed by Shawndee Kennedy. Ms. Kennedy stated that J.G. told her about an incident while her mother was in nursing school, where Appellant had made her get on top and bounce up and down, while they were unclothed, and his penis was inside her vagina. J.G. used the term "bunny" when describing the female sexual organ and "private" when describing the male sexual organ. Officer Tarango said that during her conversation with J.G., they did not get into the specific detail of her being made to bounce. J.G. testified as to the incident that occurred while her mother was in nursing school as well. J.G. stated that Ms. Kennedy was the first person she told about that particular incident. She said that the abuse started when she was five years' old, and while Appellant stopped putting

his "private" into her "bunny" when she started having her period, he continued to make her play with his "private." She was also told by Appellant not to tell anyone about what was happening. Appellant would make her touch him if she wanted permission to do something such as go to a friend's house, or else she would not be allowed.

After a motion to sever, Appellant was tried only on count two of the indictment, aggravated sexual assault of a child, and was convicted and sentenced by the jury to fifty years' in prison.

In his first issue, Appellant argues that the appeal should be abated until findings of facts and conclusions of law on the voluntariness of his statement as required under the Code of Criminal Procedure are filed. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 2005). On March 1, 2007, we abated Appellant's appeal, and directed the court to enter such findings of fact and conclusions of law. The trial court filed written findings of fact and conclusions of law regarding the voluntariness of Appellant's confession with this Court on May 2, 2007. Therefore, Appellant's first issue is moot.

In Issue Two, he challenges the voluntariness of the statement given to Officer Jackson and its admission at trial. We review the trial court's ruling on a motion to suppress for an abuse of discretion. *Guzman v. State*, 955 S.W.2d 85, 88-9 (Tex.Crim.App. 1997). Under this standard we give almost total deference to the trial court's determination of historical facts supported by the record, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review *de novo* mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor. *Id*.; *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). The trial court's ruling will be upheld if it is reasonably supported by the

record and is correct on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). The voluntariness of a confession is determined by considering the totality of the circumstances under which the statement was given. *Creager v. State*, 952 S.W.2d 852, 855 (Tex.Crim.App. 1997), *citing Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). The ultimate question is whether the defendant's will was overborne. *Creager*, 952 S.W.2d at 856, *citing Armstrong v. State*, 718 S.W.2d 686, 693 (Tex.Crim.App. 1985). In determining whether defendant's will was overborne, the court looks at the length of detention, incommunicado or prolonged interrogation, denying access to a family member, refusing defendant's request to telephone a lawyer or family member, and physical brutality. *Pace v. State*, 986 S.W.2d 740, 747 (Tex.App.--El Paso 1999, pet. ref'd).

Specifically, Appellant argues that as a result of his mental instability and law enforcement's coercive actions, Appellant confessed to certain extraneous offenses, and the court erred by admitting an involuntary statement that was taken in violation of his federal due process rights. The trial court held a hearing on the admissibility of Appellant's statement. Sergeant Jackson testified that he took a statement from Appellant on June 8, 2005 during late evening. He stated that Appellant had not been handcuffed or booked into jail. Appellant was in his office giving the statement for maybe two hours. Appellant was not deprived of anything, nor threatened by anyone while in his presence. He was also free to leave the entire time while giving his statement. Sergeant Jackson typed the statement out while Appellant spoke. Appellant had an opportunity to review the statement and initialed every right under Miranda and each page. Sergeant Jackson was aware that Appellant had threatened to commit suicide. He denied ever mentioning probation to Appellant. He said Appellant was cooperative, calm, and

very talkative.

Appellant also testified for the sole purpose of determining the admissibility of the statement. The city police took him to the police department. He had threatened to cut himself up. He voluntarily gave Sergeant Jackson a statement. Contrary to Sergeant Jackson, he said he was told that he would probably get probation due to the voluntary statement. He spoke to an individual about his attempted suicide before speaking with Sergeant Jackson. The individual "got [him] settled down," and he was settled down when he was speaking with Sergeant Jackson. He was never handcuffed, was not arrested at any time, and the statements in his confession were true.

Article 38.22, section 2 of the Texas Code of Criminal Procedure governs the admissibility of an accused's written statement. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2. If the statement is a result of a custodial interrogation, it is inadmissible unless the accused receives from the person to whom the statement is made and voluntarily waives the following rights:

(1)     he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2)     any statement he makes may be used as evidence against him in court;

(3)     he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5)     he has the right to terminate the interview at any time . . . .

See TEX.CODE CRIM.PROC.ANN. art. 38.22, § 2.

The State argues that Appellant was not in custody and therefore, Article 38.22 does not

preclude the statement from being admissible. A statement that is the result of a noncustodial interrogation is admissible at trial. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5. Appellant asserts that under the totality of the circumstances given Appellant's suicide threats, the alleged coercive actions by the police, and his mental state show that Appellant's will was overborne. However, the record shows otherwise. The trial court's Findings of Fact and Conclusions of Law state that Appellant was given his Miranda Warnings and waived those warnings, that his statement was freely and voluntarily given without duress, coercion, or improper influence, and he was not in custody at the time of his statement. Even if Appellant was in custody, Sergeant Jackson complied with Article 38.22, section 2 of the Texas Code of Criminal Procedure. The required warnings were given to Appellant, and he waived them as evidenced by his initials under each right and his signature at the end of the statement, which makes the statement admissible at court. A suspect's mental deficiency alone is not determinative of the voluntariness of the confession, but is only one factor to be considered. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). While Appellant did threaten to kill himself, he testified at the hearing on the admissibility of the statement that he had "settled down" before giving his statement, and remained "settled down" while giving his statement. Furthermore, Appellant said he gave the statement voluntarily. Appellant has not shown a due process violation occurred, and the record shows he voluntarily gave his statement. We find that the trial court did not err in finding the statement was voluntarily made and admitting Appellant's statement at trial. Issue Two is overruled.

In Issue Three, Appellant contends the trial court erred in finding that the probative value of Appellant's confession to certain extraneous offenses outweighed its prejudicial effect. Rule

404 (b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX.R.EVID. 404(b).

Extraneous offenses are admissible under Article 38.37 of the Texas Code of Criminal Procedure. Section 2 of Article 38.27 states:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1)    the state of mind of the defendant and the child; and
>
> (2)    the previous and subsequent relationship between the defendant and the child.

TEX.CODE CRIM.PROC.ANN. art. 38.37, § 2 (Vernon Supp. 2007).

However, such acts may be excluded under Texas Rule of Evidence 403 if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R.EVID 403.

Appellant presented a Motion In Limine requesting that the State refrain from directly, indirectly, or through witness testimony commenting or alluding to all admissions of Appellant regarding any crimes other than the crime for which Appellant was being tried. Appellant's counsel did not reference any particular statute or rule on which he based his motion. The State

argued that Appellant's statement was admissible under Article 38.37, section 2 of the Code of Criminal Procedure. The State while arguing the motion stated "the only objection to them, really, is 403. . . . You know, the prejudicial impact versus the probative value." The State continued to argue the admissibility of the extraneous offenses under Article 38.37 to show the state of mind of J.G. and her relationship with Appellant, while only once mentioning the probative value of the offenses, but did not discuss them in contrast to their prejudicial impact. Appellant's trial counsel did not argue that the prejudicial impact outweighs its probative value after the statement.

If it is apparent from the record that the trial court understood the objection and its grounds, error is preserved. *Dixon v. State*, 928 S.W.2d 564, 564-65 (Tex.Crim.App. 1996). Whether the specific grounds for the objection were apparent from the context of the objection is determined by looking at each situation individually as it arises. *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex.Crim.App. 2004). A Rule 403 objection is not implicitly contained in relevancy or 404(b) objections; rather a specific Rule 403 objection must be raised to preserve error. *Lopez v. State*, 200 S.W.3d 246, 251 (Tex.App--Houston [14th Dist.] 2006, pet. ref'd). In this case, Appellant did not make a specific 403 objection. There is no mention of the basis for his Motion in Limine to exclude the admissions of extraneous offenses. Appellant did request and receive a continuing objection as to each time the State brought up the evidence of Appellant's admissions of extraneous offenses. However, there is no mention as to what the objection is based upon other than the Appellant does not want the State "to throw our confession back into our faces regarding all the extraneous offenses." There is also no evidence in the record that the trial judge understood the grounds for the objection. Appellant, in his brief, also argues that the

presentation of the admission of extraneous offenses confused and misled the jury and only presented cumulative evidence. Appellant also failed to object under these grounds. It is not apparent from the context of the objections in the record that the trial court understood the objections and its grounds. We hold Issue Three was not properly preserved for appeal.

In Issue Four, Appellant argues that the court erred in denying his motion for mistrial based on the State's misrepresentation and the resulting inadmissible hearsay testimony introduced at trial. Appellant contends that Officer Tarango was the correct outcry witness and not Shawndee Kennedy.

Article 38.072, § 2(a) reads as follows:

This article applies only to statements that describe the alleged offense that:

    (1)    were made by the child against whom the offense was allegedly committed; and

    (2)    were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the defense.

TEX.CODE CRIM.PROC.ANN. art. 38.072, § 2 (Vernon 2005).

The statement describing the alleged offense must be "more than words which give a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App. 1990). The child's statement must describe the alleged offense "in some discernible manner." *Id*. An outcry witness is not person-specific, but event-specific. There may be two proper outcry witnesses if they each testify about different events, but there may be only one outcry witness if they only testify about one event. *Broderick v. State*, 35 S.W.3d 67, 73 (Tex.App.--Texarkana 2000, pet. ref'd). The proper outcry witness to a single

-10-

event is the first adult person other than the defendant to whom the victim made a statement describing the incident. *Id*. at 73-4.

In her report, Officer Tarango wrote that J.G. told her that Appellant had been touching her since the age of five. She described how Appellant had undressed her while she was sleeping in her room, and had stuck his private in her. She also told Officer Tarango about Appellant making her touch him about once a week, and had sex with her until she started menstruating. Ms. Kennedy testified as to a specific event related to her by J.G., where she was forced to get on top of Appellant and bounce up and down in her mother's room. There was evidence at trial of more than one incident of abuse. Since an outcry witness is event-specific, we conclude that the trial court did not abuse its discretion by denying the motion for mistrial based upon improper outcry witness designation.

However, even if the court erred in admitting the testimony of Ms. Kennedy as the outcry witness, we must determine if the admission of improper evidence prejudiced Appellant. Nonconstitutional error is not reversible if it does not affect an Appellant's substantial rights. TEX.R.APP.P. 44.2. Substantial rights are affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). The admission of inadmissible hearsay is nonconstitutional error, and will be considered harmless if, after examining the record as a whole, there is reasonable assurance the error did not influence the jury verdict, or had but a slight effect. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998). Improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Dewberry v. State*, 4 S.W.3d 735, 754 n.18 (Tex.Crim.App. 1999). In this case, J.G. testified to

-11-

the same events as Ms. Kennedy along with those in Officer Tarango's report. After examining the record as a whole, there is reasonable assurance that the statements made by Ms. Kennedy did not improperly influenced the jury since J.G. testified to the same events. Any error that may have occurred was harmless. Issue Four is overruled.

Having overruled all of Appellant's issues, we affirm the conviction.

June 26, 2008

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)