NUMBER
13-09-00623-CR

 

COURT
OF APPEALS

 

THIRTEENTH
DISTRICT OF TEXAS

 

                                  CORPUS
CHRISTI - EDINBURG

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JUAN REYES RIVERA,                                                                Appellant,

 

v.

 

THE STATE OF TEXAS,                                                                
Appellee.

 

 



On
appeal from the 94th District Court

of Nueces
County, Texas.

 

 



MEMORANDUM
OPINION

 

Before
Chief Justice Valdez and Justices Rodriguez and Perkes

Memorandum Opinion by Chief
Justice Valdez

            Appellant, Juan Reyes Rivera, was
charged by indictment with the offense of continuous sexual abuse of a child, a
first-degree felony.  See Tex.
Penal Code Ann. § 21.02(b), (h) (Vernon Supp. 2010).  A jury convicted
Rivera of the charged offense and sentenced him to life imprisonment in the
Institutional Division of the Texas Department of Criminal Justice.  By one
issue, Rivera asserts that he was provided ineffective assistance of counsel
because his trial counsel allegedly failed to object to the admission of
hearsay testimony from several witnesses, the admission of testimony concerning
the child victim’s truthfulness, and the prosecutor’s closing argument.  We
affirm.

I.             
Background

Rivera was charged
with continuously sexually abusing J.E., an eight-year-old child.[1]  See id.
§ 21.02(b).[2]  
The abuse was discovered when one of J.E.’s sisters read a diary that J.E.
kept.  In her diary, J.E. noted that “My grandpa [Rivera] tries to rape me[,]
and I don’t feel comfortable.”  When J.E.’s sister discovered this note, she
immediately took it to J.E.’s mother, C.L.  C.L. was surprised by the
allegations, but she asked J.E. about the incidents.  J.E. told C.L. that
Rivera had touched her more than one hundred times and that he had repeatedly
exposed his penis to her.  J.E. initially told C.L. that Rivera had only
touched her with his hands; however, she later noted that Rivera also touched
her with his penis and that he had penetrated her vagina with his finger. 
After hearing this story, C.L. took J.E. to Driscoll Children’s Hospital
(“Driscoll”) in Corpus Christi, Texas, so that she could undergo an
examination.  

Nurse Sandra Pardo, a
sexual abuse nurse examiner at Driscoll, conducted the examination of J.E. 
Nurse Pardo did not find any evidence of trauma to J.E.’s sexual organs;
however, she noted that it is often the case that trauma is not revealed in the
examination because the body heals very quickly.  Nurse Pardo also took a
history from J.E., whereby J.E. stated that: 

Grandpa,
Juan Rivera, tried to do some nasty stuff with me.  He touched it (patient
[J.E.] indicates female sexual organ by pointing.)  His hands were over my
pants.  I told him to stop.  He stopped.  He always does it when Grandma
[Blanca Rivera] is gone or asleep.  My brothers and sisters go out to play and
he grabs me.  

 

Nurse Pardo did not recall J.E. telling
her that Rivera penetrated her sexual organ or her anus with his penis or that
he ejaculated.    

Tanya Flores, an
investigator with the Corpus Christi Police Department, testified that J.E.
“disclose[d] issues pertaining to sexual abuse.”  Investigator Flores recalled
viewing J.E.’s diary, where J.E. described that Rivera had raped her;
Investigator Flores noted that J.E. first told her brother, S.E., about the
abuse before she told C.L.  J.E. told Investigator Flores that the abuse took
place for two years, from when J.E. was six years old until she was eight years
old.  Investigator Flores also discovered that the alleged sexual abuse
transpired at Rivera’s house in Corpus Christi and at a resort in New
Braunfels.

Ricardo Jimenez, the
program director and lead forensic interviewer at the Children’s Advocacy
Center in Corpus Christi, testified that he interviewed J.E. about the alleged
incidents of sexual abuse for eighteen minutes, a length that Rivera suggested
on cross-examination was insufficient to obtain the truth.[3]  Jimenez noted
that J.E. seemed to add details each time she was asked about the abuse.  He
characterized this as “incremental disclosure,” wherein “sometimes kids think
they’re in trouble, so they’ll kind of give a little bit of information.  If
that’s okay, then more comes out. . . .  [I]f we have an incident of abuse
that’s occurred over a long period of time, again, more comes out with time.” 
J.E. told Jimenez that Rivera would tell her that she would owe him “big” or
“big time” each time she asked for something and Rivera would buy it.  Towards
the end of the interview, Jimenez left the room to discuss the case with
others.  He later returned to clear up discrepancies in J.E.’s stories,
especially between her statement to him and the statements made at Driscoll.[4]  J.E. told
Jimenez that Rivera had penetrated her vagina “30 plus times” and that he had
touched her vagina more than 100 times.            

S.E. testified that
J.E. is one of his younger sisters and that she was “a good kid” who did not
get in a lot of trouble.  S.E. recalled that Rivera treated J.E. differently
than the other grandchildren.  In particular, S.E. stated that “he [Rivera]
would give her all this money and like we wouldn’t get no [sic] money and like
we would have to use our own money like if we wanted to buy snacks and then he
gave her money so she didn’t use her money.”  S.E. thought that Rivera treated
J.E. as his favorite.  S.E. remembered that J.E. told him that Rivera was
touching her, but he “didn’t really think nothing [sic] of it.”  S.E. also
remembered one incident where he and his sister, M.E., were locked out of
Rivera’s house while J.E. and Rivera were the only ones inside.  On
cross-examination, Rivera’s trial counsel questioned S.E. regarding the
locked-door incident.  S.E. recalled hearing the door lock and trying to open
the door, but it would not open.  In addition, S.E. denied ever being touched
inappropriately by Rivera.

Rosemary Goltz, a
licensed professional counseling intern, stated that she spoke with J.E. about
the incidents and that J.E. appeared to be tired and regressing or, in other
words, acting like a baby.  Goltz attributed J.E.’s odd behavior to
post-traumatic stress disorder.  Goltz remembered that J.E. had difficulty
concentrating, and it appeared that J.E. wished to block out the incidents and
no longer talk about them.  J.E. disclosed the alleged sexual abuse to Goltz,
and at the conclusion of the interview, Goltz assisted J.E. in filling out a
questionnaire.  In the questionnaire, J.E. indicated that Rivera had:  (1) been
naked around her; (2) masturbated in front of her; (3) not engaged in
intercourse with her; (4) had oral or anal sex with her; (5) did not force her
into prostitution; and (6) forced her to watch pornographic movies.

On cross-examination
of each of the aforementioned witnesses, Rivera’s trial counsel inquired about
J.E.’s stories about the abuse, insinuating that J.E. may have not been
truthful given the fact that her story changed repeatedly.  Rivera’s trial
counsel repeatedly asked the witnesses about the apparent inconsistencies in
J.E.’s retelling of the abuse, thus placing J.E.’s credibility at issue.  It
was only on re-direct examination that the State asked questions of the
witnesses regarding J.E.’s truthfulness in order to rebut the impression that
Rivera’s trial counsel left with the jury—that J.E. was not truthful.  In
addition, the State called Goltz and Paula Rosenstein, a therapist at Family
Counseling Service, to testify that J.E. was suffering from post-traumatic
stress disorder and that was likely the reason that J.E.’s stories about the
incidents changed or why J.E. seemed to add more details with each retelling of
the stories.[5]

J.E. testified that,
on March 22, 2008, she wrote in her diary that Rivera had raped her and that
she did not feel comfortable about it.  J.E. recalled that Rivera touched her
vagina with his hands, both over her clothes and underneath her clothes.  J.E.
stated that the sexual abuse typically occurred in the guest room of Rivera’s
house, which she considered to be her room.  She recalled one incident where
Rivera allegedly got on top of her while she was wearing his white t-shirt.  In
this instance, J.E. was not wearing any underwear and Rivera purportedly rubbed
J.E.’s vagina with his penis.  She remembered that something white would often
come out of Rivera’s penis.  J.E. denied that Rivera touched her anywhere else
but her vagina.  J.E. also testified that Rivera would make her watch
pornographic movies and that he would masturbate in front of her while watching
the movies.  Further, J.E. noted that Rivera gave her candy, gifts, and money
frequently despite allegedly not giving the other grandchildren anything.  The
State characterized these actions as “grooming” J.E. or, in other words,
bribing her to keep quiet about the sexual abuse.  Later in her testimony, J.E.
admitted that she had not told Nurse Pardo or Jimenez everything that had
transpired, and she denied ever telling Jimenez that Rivera had ever put his
penis inside her vagina.    

Rivera and his wife, Blanca
Rivera, testified on Rivera’s behalf.  Blanca testified that she did not
believe that Rivera sexually abused J.E.  According to Blanca, J.E. told her
that “nobody touches me.”  Blanca explained that:

She’s—she’s
a good little girl, but she lies.  She likes to make up stories, likes to lie a
lot, to get her way.  If she don’t [sic] get her way, she gets into lying, to
get the other kids in trouble.  That’s how she is.  She’s a sweetheart, and I
love her very much, but she lies to get her way all the time.  She lies a lot. 
Constantly lying.  

 

Blanca also testified that virtually
everyone else who alleged that Rivera engaged in wrongdoing lies, especially
C.L.  Blanca denied seeing Rivera doing “stuff for just [J.E.] without also
doing stuff for the other kids.”  She later recognized a letter sent by Rivera
to C.L., which included $12 for just J.E., but Blanca explained that Rivera
really meant for the money to go to J.E. and one of her brothers.  Blanca
testified that there are not any pornographic movies or magazines at the Rivera
house.  Blanca acknowledged that she had not spoken to J.E. since J.E. made her
outcry statements, more than two years later.  Blanca further testified that
Rivera did not pay special attention to J.E.

Rivera testified on
his own behalf and denied the allegations made in the indictment and the
allegations made by J.E.  Rivera denied treating J.E. any differently than his
other grandchildren.  Rivera explained that the $12 he sent J.E. was to be used
to buy lunch at school.  Rivera testified that he and C.L. had an agreement for
Rivera to claim J.E. as a dependent on his income tax return for 2006 and
2007.  He also testified that Blanca was in charge of the money, and he was
only allowed to buy the grandchildren snacks at the store.  Rivera agreed with
Blanca that his grandchildren were “a bunch of little liars.”  Rivera believed
that the allegations were made against him because he had previously stated
that he was no longer going to baby-sit the children and he was no longer going
to assist C.L. financially.  

II.           
Standard of Review

To establish ineffective
assistance of counsel, Rivera must show:  (1) his attorney’s representation
fell below an objective standard of reasonableness; and (2) there is a reasonable
probability that, but for his attorney’s errors, the result of the proceeding
would have been different.  See Strickland v. Washington, 466 U.S. 668,
684 (1984); Dewberry v. State, 4 S.W.3d 735, 757 (Tex. Crim. App. 1999)
(holding that appellant must show a reasonable probability that, but for
counsel’s errors, the fact-finder would have had a reasonable doubt as to
appellant’s guilt); Jaynes v. State, 216 S.W.3d 839, 851 (Tex.
App.–Corpus Christi 2006, no pet.).  Whether this test has been met is to be
judged on appeal by the totality of representation, not by any isolated acts or
omissions.  Jaynes, 216 S.W.3d at 851.  Rivera has the burden of proving
ineffective assistance of counsel by a preponderance of the evidence.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing Cannon v.
State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)).

Our review of counsel’s
representation is highly deferential, and we will find ineffective assistance
only if Rivera overcomes the strong presumption that his counsel’s conduct fell
within the range of reasonable professional assistance.  See Strickland,
466 U.S. at 689; Jaynes, 216 S.W.3d at 851.  The right to “reasonably
effective assistance of counsel” does not guarantee errorless counsel or
counsel whose competency is judged by perfect hindsight.  Saylor v. State,
660 S.W.2d 822, 824 (Tex. Crim. App. 1983).  Moreover, the acts or omissions
that form the basis of Rivera’s claims of ineffective assistance must be
supported by the record.  Thompson, 9 S.W.3d at 814; Jaynes, 216
S.W.3d at 851.  A silent record which provides no explanation for counsel’s
actions usually will not overcome the strong presumption of reasonable
assistance.  Thompson, 9 S.W.3d at 813-14.  To warrant reversal without
affording counsel an opportunity to explain his actions, “the challenged
conduct must be ‘so outrageous that no competent attorney would have engaged in
it.’”  Roberts v. State, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007)
(quoting Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005)).

III.          
The Record

 

At the outset of our
analysis of Rivera’s appellate complaints, we note that Rivera did not assert
that his trial counsel provided ineffective assistance of counsel in his motion
for new trial.  Moreover, the record does not reflect that a hearing was
conducted on Rivera’s motion for new trial; instead, the motion was overruled
by operation of law.  See Tex. R.
App. P. 21.8(a), (c); see also State v. Gutierrez, 143 S.W.3d
829, 831 (Tex. App.–Corpus Christi 2004, no pet.).  Thus, Rivera’s trial
counsel has not been afforded an opportunity to explain his trial strategy.  Given
that a silent record ordinarily will not overcome the strong presumption of
reasonable assistance, we will review Rivera’s appellate complaints to
determine whether trial counsel’s alleged inactions were “so outrageous that no
competent attorney would have engaged in [them].”  See Roberts, 220
S.W.3d at 533; Goodspeed, 187 S.W.3d at 392; Thompson, 9 S.W.3d
at 813-14.

IV.         
Hearsay

 

In his first sub-issue,
Rivera contends that his trial counsel was ineffective for failing to object to
numerous hearsay statements made by several outcry witnesses.  Rivera argues
that the admission of these statements violated article 38.072 of the code of
criminal procedure, see Tex. Code
Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2010),[6] and that, but
for his trial counsel’s failure to object to these statements, the result of
the trial would have been different.  The State counters by arguing that “the
outcries in question are inconsistent, and that Rivera’s attorney used the
inconsistencies to his advantage.”  The State also argues that much of the
outcry testimony about which Rivera complains would be admissible under various
exceptions to the hearsay rule.

On appeal, Rivera
directs us to the testimony of Lopez, Jimenez, Nurse Pardo, Goltz, and S.E.  He
argues that their testimony constituted inadmissible hearsay because their
testimony “merely repeat[ed] the same event as related to them by the victim”
and, thus, violated article 38.072.  See id.; see also
Broderick v. State, 35 S.W.3d 67, 73 (Tex. App.–Texarkana 2000, pet. ref’d)
(noting that the proper outcry witness to a single event is the first adult
person other than the defendant to whom the victim made a statement describing
the incident).

            After reviewing the record,
we hold that Rivera’s reliance on Broderick is misplaced, and we
disagree that the witnesses “merely repeat[ed] the same event as related to
them by the victim.”  See Broderick, 35 S.W.3d at 73.  First, with
respect to Broderick, we note that the Texarkana Court of Appeals stated
the following:

Because of the way in
which the statute [article 38.072] is written, an outcry witness is not
person-specific, but event-specific.  Before more than one outcry witness may
testify, however, the outcry must be about a different event, and not simply a
repetition of the same event as related by the victim to different
individuals.  From a careful reading of the outcry witness statute, we conclude
that there may be two proper outcry witnesses if they each testify about
different events, but there may be only one outcry witness to the victim’s
statement about a single event.

 

Id.  Therefore, under article
38.072, the State may call upon multiple outcry witnesses to testify so long as
the witnesses testify about different events.  In the instant case, J.E.
alleged that Rivera sexually assaulted her more than 100 times during a two-year
period—from when she was six years old until she was eight years old.  The
State’s outcry witnesses testified to J.E.’s recounting of several events,
including times when Rivera allegedly:  (1) stuck his penis inside J.E.’s
vagina; (2) touched J.E.’s vagina with his fingers; (3) rubbed his penis on
J.E.’s vagina; and (4) forced J.E. to watch pornographic videos while
masturbating.  Based on the allegations made by J.E., Rivera engaged in
numerous instances of sexual assault or, in other words, multiple events. 
Therefore, we cannot say that the outcry witnesses’ testimony repeated information
about the same event and was, therefore, inadmissible under article 38.072.  See
id.; see also Tex. Code Crim.
Proc. Ann. art. 38.072.  

Moreover, several witnesses
testified that J.E.’s story regarding the ongoing sexual abuse changed slightly
each time she told it.  In particular, Jimenez stated that J.E. appeared to
engage in what is known as “incremental disclosure,” wherein the child victim
discloses additional information about ongoing incidences of abuse each time
they speak to someone with whom they are comfortable.  Further, Rosenstein and
Goltz described J.E. as having post-traumatic stress disorder, which affected
her ability to convey detailed descriptions of the two years of alleged sexual
abuse.  The inconsistencies in J.E.’s outcry statements and the fact that the
sexual abuse was repeated and ongoing for two years do not support Rivera’s
contention that the complained-of testimony was repetitive and, thus,
inadmissible.  

Based on our review of the
record, it appears that an objection to the complained-of testimony would not
have been successful.  Instead, on cross-examination, trial counsel questioned
most of the witnesses regarding the changes in J.E.’s story about the two-year
period of sexual abuse.  Such questioning was likely done to undermine J.E.’s
credibility before the jury and, therefore, appears to be grounded in
legitimate trial strategy.  See Garza v. State, 213 S.W.3d 338, 348
(Tex. Crim. App. 2007) (stating that if counsel’s reasons for his conduct do
not appear in the record and there is “at least the possibility” that the
conduct could have been grounded in legitimate trial strategy, we will defer to
counsel’s decisions and deny relief on an ineffective-assistance claim on
direct appeal).  Furthermore, even assuming that trial counsel’s failure to
object to hearsay statements was not grounded in reasonable trial strategy,
Rivera has not clearly demonstrated that there is a reasonable probability
that, but for his trial counsel’s unprofessional errors, the result of the
proceeding would have been different, especially considering that J.E.
testified about the ongoing sexual abuse, and a child victim’s testimony alone
is sufficient to sustain a conviction for sexual assault.  See Strickland,
466 U.S. at 684; see also Tex.
Code Crim. Proc. Ann. art. 38.07 (Vernon 2005) (providing that the
testimony of the sexual abuse victim alone is sufficient to support a
conviction based on that abuse); Ozuna v. State, 199 S.W.3d 601, 606
(Tex. App.–Corpus Christi 2006, no pet.) (same).  We, therefore, overrule
Rivera’s first sub-issue.  

V.          
The Child Victim’s Truthfulness

In his second sub-issue,
Rivera argues that his trial counsel was ineffective for failing to object to
opinion testimony regarding the credibility of J.E.  In particular, Rivera
complains about the opinion testimony of Investigator Flores, S.E., and Goltz
regarding J.E.’s truthfulness and states that this testimony constituted
impermissible bolstering.  The State asserts that Rivera’s trial counsel likely
did not object to this testimony because the witnesses were “coming across as
biased”; thus, an objection would not have been beneficial.  The State also
points out that Rivera’s trial counsel elicited testimony from Rivera’s wife
that the child victim was a “good little girl” who had a tendency to lie and
make up stories.    

A.   Applicable
Law

“Bolstering occurs when one
party introduces evidence for the purpose of adding credence or weight to
earlier unimpeached evidence offered by that same party.”  Rousseau v. State,
855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (citing Guerra v. State, 771
S.W.2d 453, 474 (Tex. Crim. App. 1988).  The court of criminal appeals has also
stated that bolstering evidence is:

any evidence the sole purpose of
which is to convince the fact[-]finder that a particular witness or source of
evidence is worthy of credit, without substantively contributing “to make the
existence of a fact that is of consequence to the determination of the action
more or less probable than it would be without the evidence.”  Accordingly,
evidence that corroborates another witness’ story or enhances inferences to be
drawn from another source of evidence, in the sense that it has an
incrementally further tendency to establish a fact of consequence,
should not be considered “bolstering.”

Cohn v. State,
849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (emphasis in original) (citation
omitted).  

“Regardless of
whether a witness is impeached, additional evidence to the same effect is not
‘bolstering’ if . . . it makes any substantive contribution or incrementally
tends to further a fact of consequence.”  Briones v. State, 12 S.W.3d
126, 129 (Tex. App.–Fort Worth 1999, no pet.).  It is not improper bolstering
if the testimony elicited is used to rebut prior impeachments by opposing
counsel.  See Skeen v. State, 96 S.W.2d 567, 578 (Tex. App.–Texarkana
2002, pet. ref’d) (“Testimony elicited to rebut prior impeachments by opposing
counsel is not considered improper bolstering.”) (citing Anderson v. State,
717 S.W.2d 622, 629 (Tex. Crim. App. 1986)); see also Sepulveda v. State,
No. 13-07-627-CR, 2009 Tex. App. LEXIS 981, at *17 (Tex. App.–Corpus Christi
Feb. 12, 2009, pet. ref’d) (mem. op., not designated for publication).

B.   Discussion

In this sub-issue,
Rivera complains about statements made by Investigator Flores, S.E., and Goltz
regarding J.E.’s truthfulness.  In particular, Rivera asserts that “[i]t is
generally improper for a witness to offer a direct opinion as to the
truthfulness of another witness and such opinion is therefore inadmissible.”  Blackwell
v. State, 193 S.W.3d 1, 21 (Tex. App.–Houston [1st Dist.] 2006, pet.
ref’d).  According to Rivera, testimony from Investigator Flores, S.E., and
Goltz amounted to inadmissible bolstering of J.E.’s credibility.

After reviewing the
complained-of testimony, we are unable to find any instance of inadmissible
bolstering.  With respect to Investigator Flores, Rivera directs us to
testimony on re-direct examination whereby Investigator Flores denied that J.E.
made up her stories because she hated Rivera and stated that she believed
J.E.’s outcry statements.  However, Rivera fails to consider that his trial counsel
put J.E.’s credibility at issue numerous times throughout the trial and
especially during his first cross-examination of Investigator Flores. 
Specifically, during his first cross-examination, Rivera’s trial counsel
impeached Investigator Flores with evidence that police did not follow up in
investigating C.L.’s boyfriend as a possible suspect and asked whether  Investigator
Flores “believe[d] the child” regarding whether Rivera was the perpetrator of
these offenses.  Therefore, with respect to Investigator Flores, the State was
entitled to question Investigator Flores on re-direct examination about J.E.’s
truthfulness to rebut prior impeachment by Rivera’s trial counsel.  See Anderson,
717 S.W.2d at 629; Skeen, 96 S.W.2d at 578; see also Sepulveda,
2009 Tex. App. LEXIS 981, at *17.  The same is true with respect to S.E. and
Goltz’s testimony.  Rivera’s trial counsel questioned S.E. and Goltz about the
changes in J.E.’s stories regarding the incidents, thus putting J.E.’s
credibility at issue.  On re-direct examination, the State questioned S.E. and
Goltz about whether J.E. would make up stories about Rivera.  Therefore,
because the State was entitled to rebut Rivera’s prior impeachment of Investigator
Flores, S.E. and Goltz regarding J.E.’s truthfulness, an objection would have
likely been overruled.  As such, we cannot say that Rivera has satisfied the
first prong of the Strickland analysis.  See 466 U.S. at 684. 
Accordingly, we overrule Rivera’s second sub-issue.

VI.         
The Prosecutor’s Closing Argument

In his third sub-issue,
Rivera contends that his trial counsel should have objected to statements made
by the prosecutor during his closing argument about J.E.’s truthfulness.  The
State argues that the complained-of statements during the prosecutor’s closing
argument constituted a permissible summation of the evidence and a reasonable
deduction from the evidence; therefore, Rivera’s trial counsel did not err in
failing to object to the State’s closing argument because such an objection
likely would not have been successful.  

A.   Applicable
Law

Permissible jury argument
generally falls into one of four areas:  (1) summation of the evidence; (2)
reasonable deduction from the evidence; (3) an answer to the argument of
opposing counsel; or (4) a plea for law enforcement.  Brown v. State,
270 S.W.3d 564, 570 (Tex. Crim. App. 2008); Berry v. State, 233 S.W.3d
847, 859 (Tex. Crim. App. 2007).

Even
when an argument exceeds the permissible bounds of these approved areas, such
will not constitute reversible error unless, in light of the record as a whole,
the argument is extreme or manifestly improper, violative of a mandatory
statute, or injects new facts harmful to the accused into the trial proceeding.

 

Wesbrook v. State, 29
S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing Todd v. State, 598 S.W.2d
286, 296-97 (Tex. Crim. App. 1980)).  “The remarks must have been a willful and
calculated effort on the part of the State to deprive appellant of a fair and
impartial trial.”  Id. (citing Cantu v. State, 939 S.W.2d 627,
633 (Tex. Crim. App. 1997)).

Nevertheless, when
analyzing any harm that may have been caused by an improper jury argument, we
examine the following factors:  (1) the severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor’s remarks); (2) measures
adopted to cure the misconduct (the efficacy of any cautionary instruction by
the judge); and (3) the certainty of conviction absent the misconduct (the
strength of the evidence supporting the conviction).  Ramon v. State,
159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing Mosley v. State, 983
S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g)).

In analyzing the
State’s remarks during closing argument, we must not consider the statement in
isolation; instead, we should review the closing arguments of both parties in
order to determine the context in which the complained-of statements were
made.  See Wilson v. State, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996)
(“The applicable legal standard of review is whether, in light of the record as
a whole, there is a reasonable possibility the improper argument might have
contributed to appellant’s conviction.”); see also Ozuna, 199 S.W.3d at
613 (holding that the complained-of jury argument is considered in light of the
record as a whole).

B.   Discussion

On appeal, Rivera
specifically complains about the following statements made during the State’s
closing argument:

I mean, I—I hope,
when you go back to deliberate and you think about that that—that troubles you
as much as it troubles me because it doesn’t make any sense that [J.E.] would
lie about this only because she’s been told she can’t come around because she’s
making the house dirty, and she is the only one making this claim.

. . . .

So—so why would
[J.E.] make up a story that gets her, oh, my God, in all this hot water?  I
mean, she had to get up here and say things in front of—in front of 13 total
strangers?  I mean, imagine if you had to do that.  Imagine—we’re not talking
about raping.  Imagine if some said, “Juror, take the stand and talk about the
way things are with your wife at night,” I mean, you would be mortified,
right?  So how do you think that little kid felt like when she had to sit here
and talk about what happened, right.  Why would she put herself through that if
it wasn’t true?  I mean, that just doesn’t make sense.

. . . .

And you saw her demeanor when she was up
there.  I mean, what does that tell you?  She’s telling the truth.  I mean,
what nine or ten year old would know that a man’s erect penis is big, brown and
pointy, right?  I mean, where do you think she got that?  Do you think that
just came to her in her dreams?

During trial, Rivera’s trial
counsel repeatedly asked witnesses about the changes in J.E.’s stories regarding
the incidents.  Furthermore, both Blanca and Rivera testified that J.E., C.L.,
S.E., and others lie constantly to get their way.  Therefore, Rivera’s
defensive theory was that these allegations were falsely made in an attempt to
get Rivera in trouble, which as Rivera explained, was probably due to Rivera’s
refusal to baby-sit his grandchildren anymore.  In his closing statement, the
prosecutor responded to this defensive theory and explained that J.E. did not
have a motive to lie about Rivera.  See Brown, 270 S.W.3d at 570;
Berry, 233 S.W.3d at 859; see also Wolfe v. State, 917 S.W.2d
270, 280-81 (Tex. Crim. App. 1996) (stating that rhetorical questions are
generally within the scope of jury argument so long as they are based upon a
reasonable deduction from the evidence and that a prosecutor “may argue his
opinions concerning issues in a case so long as the opinions are based on
evidence in the record and not as constituting unsworn testimony”).  The
prosecutor also summarized the evidence adduced at trial, including testimony
from J.E. about what Rivera’s penis looked like.  See Brown, 270
S.W.3d at 570; Berry, 233 S.W.3d at 859.  Because the portion of the
prosecutor’s closing argument about which Rivera complains constitutes a
summation of the evidence and a response to Rivera’s defensive theory, we
cannot say that the prosecutor’s closing argument was improper.  See Brown,
270 S.W.3d at 570; Berry, 233 S.W.3d at 859.  Thus, an objection by
Rivera’s trial counsel to the prosecutor’s closing argument likely would not
have been successful.  As a result, we overrule Rivera’s third sub-issue.

VII.        
Conclusion

Having overruled all
of Rivera’s issues on appeal, we affirm the judgment of the trial court.      

                                                                                                                                                                                                                                                ____________________               

Rogelio Valdez

                                                                                                Chief
Justice

 

Do not publish. 

Tex. R. App.
P.
47.2(b)

Delivered and filed the 

10th day of March, 2011.









[1] To protect the
identities of the children involved, we refer to them and their mother by their
initials.  See Tex. R. App. P.
9.8.

 





[2] Section 21.02(b)
provides that a person commits the offense of continuous sexual abuse of a
young child if:

 

(1)   during a period that
is 30 or more days in duration, the person commits two or more acts of sexual
abuse, regardless of whether the acts of sexual abuse are committed against one
or more victims; and

 

(2)   at the time of the
commission of each of the acts of sexual abuse, the actor is 17 years of age or
older and the victim is a child younger than 14 years of age.

 

Tex. Penal Code
Ann. § 21.02(b) (Vernon Supp. 2010).

 





[3] A DVD of
Jimenez’s interview of J.E. was admitted into evidence.  Initially, on appeal,
the record did not contain a copy of the DVD despite a request made by Rivera’s
trial counsel to include the DVD in the appellate record.  We requested that
the trial court provide us with the DVD, which it did.  Accordingly, we have
reviewed the DVD in analyzing the record in this appeal. 

 





[4] One such
discrepancy pertained to J.E.’s disclosure to Jimenez that Rivera had had sex
with her in the shower, a story that she did not share with Nurse Pardo.





[5] Rosenstein
described J.E.’s purported post-traumatic stress disorder as follows:

 

It’s as if she’s kind of pocketed
off different things that happened to her and as she—as she can or as parts of
her kind of open up and—and she relaxes these things come to her mind.  It’s
kind of like she segmented things off so that she can cope and she can handle
it.  If she remembered everything at once[,] she would probably become
psychotic.





[6] Article 38.072
of the code of criminal procedure provides as follows, in pertinent part:

 

Sec. 1.  This article applies to a
proceeding in the prosecution of an offense under any of the following
provisions of the Penal Code, if committed against a child 14 years of age or
younger or a person with a disability:

 

(1)   Chapter 21 (Sexual
Offenses)

 

. . . .

 

Sec. 2.

 

(a)   This article applies
only to statements that:

 

(1)   describe:

 

(A)   the alleged offense; 

 

. . . .

 

(2)   were made by the child
or person with a disability against whom the charged offense or extraneous
crime, wrong, or act was allegedly committed; and

 

(3)   were made to the first
person, 18 years of age or older, other than the defendant to whom the child or
person with a disability made a statement about the offense or extraneous
crime, wrong, or act.

 

(b)   A statement that meets
the requirements of Subsection (a) is not inadmissible because of the hearsay
rule if:

 

(1)   On or before the 14th
day before the date the proceeding begins, the party intending to offer the
statement:

 

(A)   notifies the adverse
party of its intention to do so;

 

(B)   provides the adverse
party with the name of the witness through whom it intends to offer the
statement; and

 

(C)   provides the adverse
party with a written summary of the statement;

 

(2)   the trial court finds,
in a hearing conducted outside the presence of the jury, that the statement is
reliable based on the time, content, and circumstances of the statement; and

 

(3)   the child or person
with a disability testifies or is available to testify at the proceeding in
court or in any other manner provided by law. . . .

 

Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon Supp. 2010).