

IN THE
TENTH COURT OF APPEALS

No. 10-10-00188-CR

MATTHEW AARON BRAUDAWAY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. F44325

## MEMORANDUM  OPINION

The jury convicted Matthew Aaron Braudaway of aggravated sexual assault and assessed his punishment at ten years confinement.  TEX. PENAL CODE ANN. § 22.021 (Vernon Pamph. 2010).  We affirm.

### Background Facts

Matthew and Spring Braudaway are the parents of two children.  The family lived with Matthew's father, Tom Braudaway.  Spring's sister, Autumn, and her

husband, Bryan, have three children. One of the children, A.G., is the victim in this case.

On June 22, 2009, Autumn, Bryan, A.G., and A.G.'s sister were staying the night with Matthew and Spring at Tom's house. There are several different versions of the events that occurred that night that resulted in Matthew's conviction for the aggravated sexual assault of A.G.

Spring testified at trial that her two children and A.G. were sleeping in a back playroom that had a "baby gate" in the doorway. Matthew, Spring, Autumn, and Bryan were all sleeping in the living room, and Tom was in his bedroom. Around 2:00 a.m., Spring got up to use the bathroom. She went to the playroom where the children were sleeping and turned on the light to check on the children. Spring testified that she saw Matthew lying on top of A.G. with his shorts around his ankles. A.G.'s shorts and panties were thrown off to the side. Spring testified that there was skin to skin contact between Matthew's genitals and A.G.'s genitals. Spring said that she shoved Matthew off of A.G. and punched him a couple of times. She said that Matthew appeared to be passed out.

Spring further testified that Matthew was drinking that night, but that he was not intoxicated or incoherent. Spring said that she, Autumn, and Bryan were not drinking.

Spring testified that A.G. told her Matthew held her down and hurt her arm and that Matthew's beard scratched her face. Spring woke up Autumn and told her what

happened. Spring, Autumn, Bryan, and all of the children then left the house. They called the police and reported the offense.

A.G. testified at trial that Matthew "stripped" her and got on top of her. She said that Matthew took his shorts off and that she saw his "butt" and "weenie." A.G. further testified that Matthew hurt her arm and her "pee-pee tail." A.G. said that Matthew put his "weenie" in her "pee-pee tail." A.G. stated that Matthew had put his "weenie" in her "pee-pee tail" one other time.

Tom testified at trial that he got up around 2:30 a.m., made coffee, and prepared his lunch for work that day. At that time, Autumn was sleeping on the loveseat with Bryan on the floor in front of her. Spring was on the couch and Matthew was asleep on the floor. Tom said that he heard Spring get up and walk down the hallway. Tom followed her to see what was wrong. Tom saw that the baby gate in the children's playroom was open. Tom saw Matthew in the children's playroom fully clothed and all of the children were fully clothed. Spring talked to Autumn and Bryan, and they got the children and left. Tom testified that later the police came to the house and arrested Matthew.

Matthew testified that on the night of the offense he drank six beers and six mixed drinks. He stated that Spring and Autumn were also drinking. The children were all asleep in the back playroom.

Matthew testified that he got up during the night to go to the bathroom. After using the bathroom, Matthew did not pull his shorts up all the way. Matthew then "stumped" his toe coming out of the bathroom. He lost his balance and fell over the

baby gate into the children's playroom. Matthew said that his shorts were pulled down because they got caught on a screw on the baby gate. Matthew further testified that after falling over the baby gate, he landed next to A.G. Matthew was on his hands and knees attempting to get up when Spring turned on the light. Spring kicked Matthew knocking him backwards. Tom then came into the room. Matthew testified that Spring took A.G. and ran down the hall. Spring, Autumn, Bryan, and all the children left.

Matthew testified that there was no genital to genital contact with A.G. Matthew was lying next to A.G., but was not on top of her. Matthew said that his shorts were pulled down, but that he was also wearing boxer shorts that were not pulled down. Matthew stated that A.G. was fully clothed.

### Lesser-Included Offense

In the first issue on appeal, Matthew argues that the trial court erred in denying his request for a jury instruction on the lesser-included offense of indecency with a child. In determining whether the appellant is entitled to a charge on a lesser-included offense, we must consider all of the evidence introduced at trial, whether produced by the State or the defendant. *Young v. State*, 283 S.W.3d 854, 875 (Tex. Crim. App. 2009), *cert. den'd* 130 S.Ct. 1015 (2009). We use a two-pronged test in our review. *Young v. State*, 283 S.W.3d at 875; *Rousseau v. State*, 855 S.W.2d 666, 672-75 (Tex.Crim.App.1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser-included offense. *Young v. State*, 283 S.W.3d at 875; *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007). The

credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser-included offense should be given. *Young v. State*, 283 S.W.3d at 876.

The State acknowledges in its brief that indecency with a child by sexual contact is a lesser included offense of aggravated sexual assault of a child when both offenses are predicated on the same act. *See Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009). Therefore, we must determine whether there is any evidence that if Matthew is guilty, he is guilty only of indecency with a child by contact.

The State presented evidence of aggravated sexual assault. Matthew testified that he did not engage in any sexual contact with A.G. and that he accidently fell down beside her. Tom testified that no offense occurred.

A defendant's own testimony that he committed no offense, or testimony which otherwise shows that no offense occurred at all, is not adequate to raise the issue of a lesser-included offense. *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001). In *Bignall v. State*, the court held that if a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing that he is guilty only of a lesser-included offense, then a charge on a lesser-included offense is not required. *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). The evidence must establish that if a defendant is guilty, he is guilty only of the lesser included offense. *Lofton v. State*, 45 S.W.3d at 652.

The evidence does not establish that Matthew is only guilty of indecency with a child by sexual contact. The trial court did not err in denying the requested instruction. We overrule the first issue on appeal.

**Outcry Witnesses**

In his second issue on appeal, Matthew contends that the trial court erred in allowing the State to offer the outcry testimony of both Spring and Autumn. The trial court held a hearing to determine whether Spring and Autumn should both be designated as outcry witnesses pursuant to TEX. CRIM. PRO. ANN. art. 38.072 (Vernon 2007). Spring testified at the hearing that she asked A.G. if Matthew hurt her. A.G. replied that Matthew held her down and hurt her arm and that his beard scratched her face. Autumn testified at the hearing that after they all left Tom's house, A.G. said that Matthew held her arms down, that he hurt her arms and her "pee-pee tail," and that it scared her.

Article 38.072 provides an exception to the hearsay rule and is applicable to statements describing the alleged offense that (1) were made by the child against whom the offense was allegedly committed, and (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CRIM. PRO. ANN. art. 38.072 § 2 (Vernon 2007). The State is permitted to call multiple outcry witnesses if they each testify about different events. *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). To constitute outcry evidence, the child's statement must be more than a general allusion that sexual abuse is going on; the statement must describe the offense in some discernible manner. *Garcia v.*

*State*, 792 S.W.2d 88, 92 (Tex. Cr. App. 1990); *Smith v. State*, 131 S.W.3d 928, 930-931 (Tex. App.—Eastland 2004, pet. ref'd).

A.G.'s statement to Spring does not describe the offense of aggravated sexual assault in a discernable manner. Spring's testimony is not outcry testimony, and its admission for that purpose was error. However, any error in admitting the testimony of Spring did not affect Matthew's substantial rights. Tex. R. App. P. 44.2 (b). A.G. testified without objection that Matthew got on top of her and hurt her arm and her "pee-pee tail." Matthew has not shown that he was harmed by the admission of the testimony. We overrule Matthew's second issue on appeal.

**Allen Charge**

In his third issue, Matthew complains that the trial court erred in giving an *Allen* charge to the jury.[1] After retiring to deliberate, the jury sent a series of notes. The first two notes requested exhibits and also requested portions of testimony in dispute. The jury continued deliberations after being provided the requested evidence. The jury later sent a note that it appeared to be at "impasse" with the current vote being 11 guilty and 1 not guilty on Count 1. The trial court instructed the jury to continue deliberations.

The jury later sent another note asking that the jury be recessed until the morning. Matthew exercised his right under Tex. Crim. Pro. Ann. art. 35.23 (Vernon - 2006) that the jury not be allowed to separate. The trial court informed the jury of the law requiring jurors to be kept together during deliberations. The trial court explained about the overnight accommodations that would be made. The jury responded with

---

[1] *See Allen v. United States*, 164 U.S. 492 (1896).

another note that there were still 11 jurors deciding "one way" and 1 juror the "other way." The jury also expressed some concerns about staying overnight.

The trial court suggested giving an *Allen* charge at that time, but instead only instructed the jury to continue deliberations. The trial court later received a note from the jury that the jury was "hopelessly deadlocked as to Count 1 of the indictment." The note indicated that there were 11 votes for guilty and 1 for not guilty. Matthew requested a mistrial.

The trial court then gave an *Allen* charge to the jury stating:

> Ladies and gentlemen of the jury, if this jury finds itself unable to arrive at a unanimous verdict it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment will still be pending and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found. With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Don't do violence to your conscience but continue deliberating.

Some time later, the jury sent a note indicating they had reached a verdict.

The primary inquiry to determine the propriety of an *Allen* or "dynamite" charge is its coercive effect on juror deliberation. *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996). The trial court's knowledge of the holdout juror's identity is a factor to consider in determining whether the charge was coercive. *See Hollie v. State*, 967 S.W.2d 516, 520 (Tex. App.—San Antonio 1998, pet. ref'd).

In the present case, the trial court did not probe the jury or attempt to identify the minority juror. *Howard v. State*, 941 S.W.2d at 124. The trial court's information as to numeric division was an unsolicited reference in a note from the jury. *Howard v. State*, 941 S.W.2d at 124; *Hollie v. State*, 967 S.W.2d at 523. The trial court did not inform the jury that Matthew requested sequestration. We find that the charge did not have a coercive effect on juror deliberation. The trial court did not err in giving the *Allen* charge. We overrule the third issue.

## Directed Verdict

In his fourth issue, Matthew argues that the trial court erred in denying his motion for directed verdict. The indictment charged Matthew with aggravated sexual assault in two counts. Matthew moved for a directed verdict as to both counts, and the trial court denied the motion. The jury convicted Matthew of aggravated sexual assault as alleged in Count 1 of the indictment. The jury acquitted Matthew of aggravated sexual assault as alleged in Count 2 of the indictment. Matthew specifically argues that the trial court erred in denying his motion for directed verdict in Count 2.

A motion for a directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996). Because Matthew was acquitted of aggravated sexual assault in Count 2, we need not address the sufficiency of the evidence to support his conviction. *See Madden v. State*, 799 S.W.2d 683, note 2 (Tex. Crim. App. 1990). We overrule the fourth issue.

## Conclusion

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed March 16, 2011
Do not publish
[CR25]