IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-10-00188-CR

 

Matthew Aaron Braudaway,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 249th District
Court

Johnson County, Texas

Trial Court No. F44325

 



MEMORANDUM  Opinion



 

The jury
convicted Matthew Aaron Braudaway of aggravated sexual assault and assessed his
punishment at ten years confinement.  Tex.
Penal Code Ann. § 22.021 (Vernon Pamph. 2010).  We affirm.

Background Facts

            Matthew and Spring Braudaway
are the parents of two children.  The family lived with Matthew’s father, Tom
Braudaway.  Spring’s sister, Autumn, and her husband, Bryan, have three
children.  One of the children, A.G., is the victim in this case.

            On June 22, 2009, Autumn,
Bryan, A.G., and A.G.’s sister were staying the night with Matthew and Spring
at Tom’s house.  There are several different versions of the events that
occurred that night that resulted in Matthew’s conviction for the aggravated
sexual assault of A.G.

Spring testified
at trial that her two children and A.G. were sleeping in a back playroom that
had a “baby gate” in the doorway.  Matthew, Spring, Autumn, and Bryan were all
sleeping in the living room, and Tom was in his bedroom.  Around 2:00 a.m.,
Spring got up to use the bathroom.  She went to the playroom where the children
were sleeping and turned on the light to check on the children.  Spring
testified that she saw Matthew lying on top of A.G. with his shorts around his
ankles.  A.G.’s shorts and panties were thrown off to the side.  Spring
testified that there was skin to skin contact between Matthew’s genitals and
A.G.’s genitals.  Spring said that she shoved Matthew off of A.G. and punched
him a couple of times.  She said that Matthew appeared to be passed out.

Spring further
testified that Matthew was drinking that night, but that he was not intoxicated
or incoherent.  Spring said that she, Autumn, and Bryan were not drinking.

Spring testified
that A.G. told her Matthew held her down and hurt her arm and that Matthew’s
beard scratched her face.  Spring woke up Autumn and told her what happened. 
Spring, Autumn, Bryan, and all of the children then left the house.  They
called the police and reported the offense.

A.G. testified
at trial that Matthew “stripped” her and got on top of her.  She said that
Matthew took his shorts off and that she saw his “butt” and “weenie.”  A.G.
further testified that Matthew hurt her arm and her “pee-pee tail.”  A.G. said
that Matthew put his “weenie” in her “pee-pee tail.”  A.G. stated that Matthew
had put his “weenie” in her “pee-pee tail” one other time.

Tom testified at
trial that he got up around 2:30 a.m., made coffee, and prepared his lunch for
work that day.  At that time, Autumn was sleeping on the loveseat with Bryan on
the floor in front of her.  Spring was on the couch and Matthew was asleep on
the floor.  Tom said that he heard Spring get up and walk down the hallway. 
Tom followed her to see what was wrong.  Tom saw that the baby gate in the
children’s playroom was open.  Tom saw Matthew in the children’s playroom fully
clothed and all of the children were fully clothed.  Spring talked to Autumn
and Bryan, and they got the children and left.  Tom testified that later the
police came to the house and arrested Matthew.

Matthew
testified that on the night of the offense he drank six beers and six mixed
drinks.  He stated that Spring and Autumn were also drinking.  The children
were all asleep in the back playroom.

Matthew
testified that he got up during the night to go to the bathroom. After using
the bathroom, Matthew did not pull his shorts up all the way.  Matthew then
“stumped” his toe coming out of the bathroom.  He lost his balance and fell
over the baby gate into the children’s playroom.  Matthew said that his shorts
were pulled down because they got caught on a screw on the baby gate.  Matthew
further testified that after falling over the baby gate, he landed next to
A.G.  Matthew was on his hands and knees attempting to get up when Spring
turned on the light.  Spring kicked Matthew knocking him backwards.  Tom then
came into the room.  Matthew testified that Spring took A.G. and ran down the
hall.  Spring, Autumn, Bryan, and all the children left.

Matthew
testified that there was no genital to genital contact with A.G.  Matthew was
lying next to A.G., but was not on top of her.  Matthew said that his shorts
were pulled down, but that he was also wearing boxer shorts that were not
pulled down.  Matthew stated that A.G. was fully clothed.

Lesser-Included Offense

            In the first issue on
appeal, Matthew argues that the trial court erred in denying his request for a
jury instruction on the lesser-included offense of indecency with a child.  In
determining whether the appellant is entitled to a charge on a lesser-included
offense, we must consider all of the evidence introduced at trial, whether
produced by the State or the defendant.  Young v. State, 283 S.W.3d 854,
875 (Tex. Crim. App. 2009), cert. den’d 130 S.Ct. 1015 (2009).  We use a
two-pronged test in our review.  Young v. State, 283 S.W.3d at 875; Rousseau
v. State, 855 S.W.2d 666, 672-75 (Tex.Crim.App.1993).   First, the
lesser-included offense must be included within the proof necessary to
establish the offense charged; second, there must be some evidence in the
record that if the defendant is guilty, he is guilty only of the
lesser-included offense.  Young v. State, 283 S.W.3d at 875; Hall v.
State, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).  The credibility of the
evidence and whether it conflicts with other evidence or is controverted may
not be considered in determining whether an instruction on a lesser-included
offense should be given.  Young v. State, 283 S.W.3d  at 876.

            The State acknowledges in
its brief that indecency with a child by sexual contact is a lesser included
offense of aggravated sexual assault of a child when both offenses are
predicated on the same act.  See Evans v. State, 299 S.W.3d 138, 143
(Tex. Crim. App. 2009).  Therefore, we must determine whether there is any
evidence that if Matthew is guilty, he is guilty only of indecency with a child
by contact.

            The State presented evidence
of aggravated sexual assault.  Matthew testified that he did not engage in any
sexual contact with A.G. and that he accidently fell down beside her.  Tom
testified that no offense occurred.

A defendant's
own testimony that he committed no offense, or testimony which otherwise shows
that no offense occurred at all, is not adequate to raise the issue of a
lesser-included offense.  Lofton v. State, 45 S.W.3d 649, 652 (Tex. Crim.
App. 2001).  In Bignall v. State, the court held that if a defendant
either presents evidence that he committed no offense or presents no evidence,
and there is no evidence otherwise showing that he is guilty only of a
lesser-included offense, then a charge on a lesser-included offense is not
required.  Bignall v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). 
The evidence must establish that if a defendant is guilty, he is guilty only of
the lesser included offense.  Lofton v. State, 45 S.W.3d at 652.

The evidence
does not establish that Matthew is only guilty of indecency with a child by
sexual contact.  The trial court did not err in denying the requested
instruction.  We overrule the first issue on appeal.

Outcry Witnesses

            In his second issue on
appeal, Matthew contends that the trial court erred in allowing the State to
offer the outcry testimony of both Spring and Autumn.  The trial court held a
hearing to determine whether Spring and Autumn should both be designated as outcry
witnesses pursuant to Tex. Crim. Pro. Ann.
art. 38.072 (Vernon 2007).  Spring testified at the hearing that she asked A.G.
if Matthew hurt her.  A.G. replied that Matthew held her down and hurt her arm
and that his beard scratched her face.  Autumn testified at the hearing that
after they all left Tom’s house, A.G. said that Matthew held her arms down,
that he hurt her arms and her “pee-pee tail,” and that it scared her.

Article 38.072
provides an exception to the hearsay rule and is applicable to statements
describing the alleged offense that (1) were made by the child against whom the
offense was allegedly committed, and (2) were made to the first person, 18
years of age or older, other than the defendant, to whom the child made a
statement about the offense.  Tex. Crim.
Pro. Ann. art. 38.072 § 2 (Vernon 2007).  The State is permitted to call
multiple outcry witnesses if they each testify about different events.  Broderick
v. State, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd).  To
constitute outcry evidence, the child's statement must be more than a general
allusion that sexual abuse is going on; the statement must describe the offense
in some discernible manner.  Garcia v. State, 792 S.W.2d 88, 92 (Tex. Cr.
App. 1990); Smith v. State, 131 S.W.3d 928, 930-931 (Tex. App.—Eastland
2004, pet. ref’d).

A.G.’s statement
to Spring does not describe the offense of aggravated sexual assault in a
discernable manner.  Spring’s testimony is not outcry testimony, and its
admission for that purpose was error.  However, any error in admitting the
testimony of Spring did not affect Matthew’s substantial rights.  Tex. R. App. P. 44.2 (b).  A.G.
testified without objection that Matthew got on top of her and hurt her arm and
her “pee-pee tail.”  Matthew has not shown that he was harmed by the admission
of the testimony.  We overrule Matthew’s second issue on appeal.

Allen Charge

            In his third issue, Matthew
complains that the trial court erred in giving an Allen charge to the
jury.[1] 
After retiring to deliberate, the jury sent a series of notes.  The first two
notes requested exhibits and also requested portions of testimony in dispute. 
The jury continued deliberations after being provided the requested evidence. 
The jury later sent a note that it appeared to be at “impasse” with the current
vote being 11 guilty and 1 not guilty on Count 1.  The trial court instructed
the jury to continue deliberations.

            The jury later sent another
note asking that the jury be recessed until the morning.  Matthew exercised his
right under Tex. Crim. Pro. Ann.
art. 35.23 (Vernon -2006) that the jury not be allowed to separate.  The trial
court informed the jury of the law requiring jurors to be kept together during
deliberations.  The trial court explained about the overnight accommodations
that would be made.  The jury responded with another note that there were still
11 jurors deciding “one way” and 1 juror the “other way.”  The jury also
expressed some concerns about staying overnight.

            The trial court suggested
giving an Allen charge at that time, but instead only instructed the
jury to continue deliberations.  The trial court later received a note from the
jury that the jury was “hopelessly deadlocked as to Count 1 of the
indictment.”  The note indicated that there were 11 votes for guilty and 1 for
not guilty.  Matthew requested a mistrial.

            The trial court then gave an
Allen charge to the jury stating:

Ladies and gentlemen of the jury, if
this jury finds itself unable to arrive at a unanimous verdict it will be
necessary for the Court to declare a mistrial and discharge the jury.  The
indictment will still be pending and it is reasonable to assume that the case
will be tried again before another jury at some future time.  Any such future
jury will be impaneled in the same way this jury has been impaneled and will
likely hear the same evidence which has been presented to this jury.  The
questions to be determined by that jury will be the same questions confronting
you, and there is no reason to hope the next jury will find these questions any
easier to decide than you have found.  With this additional instruction, you
are requested to continue deliberations in an effort to arrive at a verdict
that is acceptable to all members of the jury, if you can do so without doing
violence to your conscience.  Don’t do violence to your conscience but continue
deliberating.

 

Some time later, the jury sent a note
indicating they had reached a verdict. 

The primary
inquiry to determine the propriety of an Allen or "dynamite"
charge is its coercive effect on juror deliberation.  Howard v. State,
941 S.W.2d 102, 123 (Tex. Crim. App. 1996).  The trial court’s knowledge of the
holdout juror’s identity is a factor to consider in determining whether the
charge was coercive.  See Hollie v. State, 967 S.W.2d 516, 520 (Tex. App.—San
Antonio 1998, pet. ref’d).

In the present
case, the trial court did not probe the jury or attempt to identify the
minority juror.  Howard v. State, 941 S.W.2d at 124.  The trial court's
information as to numeric division was an unsolicited reference in a note from
the jury.  Howard v. State, 941 S.W.2d at 124; Hollie v. State,
967 S.W.2d at 523.  The trial court did not inform the jury that Matthew
requested sequestration.  We find that the charge did not have a coercive
effect on juror deliberation.  The trial court did not err in giving the Allen
charge.  We overrule the third issue.

Directed Verdict

            In his fourth issue, Matthew argues that
the trial court erred in denying his motion for directed verdict.  The
indictment charged Matthew with aggravated sexual assault in two counts. 
Matthew moved for a directed verdict as to both counts, and the trial court
denied the motion.  The jury convicted Matthew of aggravated sexual assault as
alleged in Count 1 of the indictment.  The jury acquitted Matthew of aggravated
sexual assault as alleged in Count 2 of the indictment.  Matthew specifically
argues that the trial court erred in denying his motion for directed verdict in
Count 2.

            A motion for a directed
verdict is a challenge to the legal sufficiency of the evidence.  Williams
v. State, 937 S.W.2d 479 (Tex. Crim. App. 1996).  Because Matthew was
acquitted of aggravated sexual assault in Count 2, we need not address the
sufficiency of the evidence to support his conviction.  See Madden v. State,
799 S.W.2d 683, note 2 (Tex. Crim. App. 1990).  We overrule the fourth issue.

Conclusion

            We affirm the trial court’s judgment.

 

 

                                                                        AL
SCOGGINS

                                                                        Justice

 

Before
Chief Justice Gray,

            Justice
Davis, and

            Justice
Scoggins

Affirmed

Opinion
delivered and filed March 16, 2011

Do
not publish 

[CR25]








 









[1] See Allen v. United States, 164
U.S. 492 (1896).