**Theodore Michael BRODERICK, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 06–00–00019–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 14, 2000.

Decided Oct. 26, 2000.

70

Creta Lynn Carter II, Sherman, Cindy Stormer, Gainesville, for appellant.

James Moss, Dist. and County Atty., Bonham, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

Theodore Broderick appeals from his conviction in a jury trial for the offense of aggravated sexual assault on a child. He

was sentenced to life imprisonment on one count, and to twenty years' imprisonment and a $10,000.00 fine on the second count.

Broderick contends that the trial court erred by excluding evidence that a different individual had sexually assaulted the complainant at an earlier date and then allowing the prosecutor to argue that the complainant had exhibited sexual knowledge that a seven-year-old child should not have.

He contends that the court erred by allowing the State to use outcry evidence from the wrong witness and erred by denying his motion for new trial based on that error, that the evidence was legally and factually insufficient to support the verdict, that the court erred by failing to order a mistrial based on the prosecutor's comments about the defendant's failure to testify, and that counsel was ineffective for failing to object to those comments, as well as for failing to conduct an adequate voir dire, failing to object to the admission of extraneous offenses, failing to effectively cross-examine the State's expert witnesses, failing to obtain his own expert to rebut the State's allegations, failing to object to comments about preteen sex news groups, and failing to cross-examine a witness about prior inconsistent statements.

The child victim, M.M., was seven years old at the time of the offenses. She called Broderick "Uncle Mike" because he is the uncle of M.M.'s mother. M.M. testified that she visited Broderick's house from time to time, and that he would use his computer to make cards and play games with her. She testified that he began touching her in spots where he was not supposed to touch her, and that he would show her his private spots, sometimes with her clothes on and sometimes with them off. She testified that he told her to touch his private parts, and that she rubbed them up and down until white stuff came out.

When she was asked if he had ever licked or put his finger in her private parts, she initially said no, but then told

the jury she was afraid Broderick would come after her. She then described how he would touch her genitals with his tongue and put his tongue inside her while her clothes were on the floor. She also testified that he showed her pictures on his computer of little girls "doing stuff with their uncles," which she described as "having sex," and that he told her she was going to have to do that with him one day.

## OUTCRY WITNESS

Broderick contends that the trial court erred in designating Officer David Thompson as the outcry witness rather than the child's mother, Tammy Mueller. Article 38.072 of the Code of Criminal Procedure provides that a child victim's hearsay statement about the offense is admissible in certain circumstances. Article 38.072 provides as follows:

> This article applies only to statements that describe the alleged offense that:
>
> (1) were made by the child against whom the offense was allegedly committed; and
>
> (2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

TEX CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.2000).

Broderick contends that Mueller was the correct outcry witness rather than Officer Thompson. He argues that M.M.'s first statements to an adult were made to her mother rather than to Officer Thompson, who testified for the State as the outcry witness.

The State initially filed motions identifying Mueller as its outcry witness. The prosecutor later filed a motion identifying Officer Thompson as the outcry witness. The motions are identical, both stating that the individual was the first person to whom the child victim made a statement about the offense alleged in the indictment. They both summarize the statement as

being that M.M. did not want to spend the night with Broderick because he touched her, that he rubbed and licked her private part, that he wanted her to suck his penis, that he had shown her pictures of sexual acts on his computer, that he put his finger and tongue into her vagina, and that he forced her to masturbate him.

The trial court conducted a hearing outside the presence of the jury in order to determine who was the proper outcry witness. At the hearing, Mueller testified that when M.M. began making excuses for not visiting Broderick, she asked her what was going on. Mueller testified that M.M. told her she did not want to go to Broderick's house because "he touches me." Mueller testified that she asked her how, and M.M. cupped her hand and moved it back and forth, pointing to her genitals. On cross-examination, Mueller stated repeatedly that the information provided by M.M. at that time was no more than the bare bones of an allegation that he had touched her genitals, and that she believed at that time that Broderick had only touched M.M. through her clothing.

Officer Thompson testified to a much more detailed statement. He testified that when Mueller brought M.M. in for an interview, she answered his questions in graphic detail. M.M. first told the officer that Broderick had been feeling her. When Thompson began questioning M.M., she told him that Broderick had licked her and that he wanted her to suck him back. Thompson said that when M.M. told him this, she looked at her mother and said over and over, "I never did it, I never did it." He also stated that it was obvious that the mother was not prepared for what she heard and that he had to help the

mother out of the room because of the emotional shock caused by the statements.

■ We recently addressed a similar issue in *Thomas v. State*, 1 S.W.3d 138 (Tex.App.—Texarkana 1999, no pet.). As we said in that opinion, the proper outcry witness is not to be determined by comparing the statements the child gave to different individuals and then deciding which person received the most detailed statement about the offense. *Id.; see Reed v. State*, 974 S.W.2d 838, 841 (Tex. App.—San Antonio 1998, pet. ref'd).

■ Article 38.072 contemplates allowing the first person to whom the child described the offense in some discernible manner to testify about the statements the child made. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App.1990).[1] We recognized in *Thomas* that "[a] 'statement about the offense' means more than a general allusion to sexual abuse. It must describe the alleged offense in some discernible manner." *Thomas v. State*, 1 S.W.3d at 140–41; *see Garcia v. State*, 792 S.W.2d at 91.

■ Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific. Before more than one outcry witness may testify, however, the outcry must be about different events, and not simply a repetition of the same event as related by the victim to different individuals. From a careful reading of the outcry witness statute, we conclude that there may be two proper outcry witnesses if they each testify about different events, but there may be only one outcry witness to the victim's statement about a single event. The proper outcry witness to a single event is the first adult person other than the defendant to

1. The cases in which the first person told about an incident of abuse was not qualified as the outcry witness involve situations in which the first statement was nothing more than a general allusion to abuse. *Garcia v. State*, 792 S.W.2d 88, 91 (Tex.Crim.App. 1990); *Reed v. State*, 974 S.W.2d 838, 842 (Tex.App.—San Antonio 1998, pet. ref'd); *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd); *Villalon v. State*, 805 S.W.2d 588, 592–93 (Tex.App.—Corpus Christi 1991, no pet.); *Garibay v. State*, 787 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1990, pet. ref'd).

whom the victim made a statement describing the incident. *See Turner v. State*, 924 S.W.2d 180, 183 (Tex.App.—Eastland 1996, pet. ref'd); *see also Hernandez v. State*, 973 S.W.2d 787, 789 (Tex.App.—Austin 1998, pet. ref'd).

■ Broderick was tried in a single prosecution on an indictment listing five separate acts in two counts. Each of the five paragraphs alleges that the events occurred on or about September 29, 1997. The offense of touching M.M. was clearly set out in a discernible manner in her outcry to Mueller, even though its full extent or the precise nature in which it was accomplished was not stated. The trial court abused its discretion by determining that the officer was the outcry witness about the touching described by M .M. because she had previously told Mueller the same story in a discernible manner.

■ However, there was evidence at the hearing that Officer Thompson was the first person to hear M.M.'s outcry stating that Broderick had licked her genitals. Thus, we conclude that the trial court did not abuse its discretion by determining that Officer Thompson was the outcry witness for that act.

Broderick also argues under this contention that other evidence introduced during the trial cast doubt on Mueller's veracity, suggesting that M.M. actually told her more than Mueller was willing to recount for the court at the hearing. Family members testified that Mueller had initially claimed that Broderick had only fondled M .M. through her clothes and was disappointed when they informed her that this would not constitute rape. According to those witnesses, she reappeared the next day with another story, that M.M. had told her Broderick forced her to engage in oral sex. They testified that it was four days after the initial confrontation before Mueller went to the police. Because of this trial testimony, Broderick argues that the court could not have properly concluded

that the police officer was a proper outcry witness. We disagree.

■ The court made its ruling about the outcry witness pretrial. When this evidence was eventually introduced at trial, counsel did not ask the trial court to reconsider its ruling because of the additional information that had become available through the testimony of the other family members. Even if the evidence had been brought forward at the pretrial hearing, it would only be evidence contrary to Mueller's testimony, not conclusive evidence. Conflicts in the evidence are for the jury to resolve.

■ Having found that the trial court erred in failing to sustain Broderick's hearsay objection to the officer's designation as the outcry witness for the touching incident, we must determine whether the error was harmful. Tex. R.App.P. 44.2. We recently addressed the application of a harm analysis to this type of error in *Thomas, supra*, and will apply the analysis set out in that opinion. Thus, we review the error under Rule 44.2(b). The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *Mayes v. State*, 816 S.W.2d 79, 88 (Tex.Crim.App. 1991).

■ We cannot say, after examining the record as a whole, that allowing Officer Thompson to testify about the statement improperly influenced the jury. M.M. testified to the same matter, and M.M.'s mother, who would have been the proper outcry witness for the "feeling" allegation, did not testify about that event.

Admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. *Willis v. State*, 785 S.W.2d 378, 383 (Tex.Crim.App.1989); *Poole v. State*, 974 S.W.2d 892, 899 (Tex. App.—Austin 1998, pet. ref'd). Because the same evidence was introduced through other testimony without objection, the trial court's error in admitting the statement was harmless.

### EXTRANEOUS ACTS

■ Broderick next contends that the trial court erred by refusing to admit testimony that M.M. had engaged in sexual activity or was sexually assaulted by a family member other than Broderick. The evidence would have alleged that a cousin of M.M. had placed his penis in her hand. Broderick contends this evidence was relevant because the prosecutor argued to the jury that a child of M.M.'s young age should not know about such sexual practices. The court conducted a hearing under TEX.R.EVID. 412. At the hearing, both Mueller and M.M. testified that this occurred *after* the date of the events of this case. To the contrary, Broderick's sister testified that she overheard the cousin and his mother talking about the act *before* any of the matters involving Broderick occurred.

■ We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim. App.1996); *Montgomery v. State*, 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990). We will not reverse a ruling that is within the "zone of reasonable disagreement." *Green v. State*, 934 S.W.2d at 102; *Montgomery v. State*, 810 S.W.2d at 391 (opinion on reh'g). There was evidence from which the court could reasonably have concluded that the sexual act with the cousin was not relevant because it had occurred after the offense on trial. The court,

therefore, did not abuse its discretion by excluding the evidence.

### INSUFFICIENT EVIDENCE

■ Broderick contends that the trial court erred by failing to grant his motion for an instructed verdict because there is insufficient evidence to indicate when the crime was committed and whether he committed the offense. A point of error complaining about a trial court's failure to grant a motion for directed verdict is a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996); *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993). However, even though the point of error is explicitly limited to a legal sufficiency review, counsel argues both legal and factual sufficiency. We will accordingly address both issues.

■ A legal sufficiency review requires us to review the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex.Crim.App.1995).

■ A factual sufficiency challenge requires us to view the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App. 2000); *see Clewis v. State*, 922 S.W.2d 126, 134 (Tex.Crim.App.1996). We view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Johnson v. State*, 23 S.W.3d at 6; *Clewis v. State*, 922 S.W.2d at 129. We review the evidence that tends to prove the existence of the elemental fact in dispute and compare it with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996). In conducting a factual sufficiency review, we review the fact finder's weighing of the

evidence, and we are authorized to disagree with the fact finder's determination. *Johnson,* 23 S.W.3d at 6; *Clewis v. State,* 922 S.W.2d at 133.

The indictment alleged that the offense occurred on or about September 29, 1997, the date the matter was reported to the police. Thus, the State may prove that the act occurred before the date of the presentation of the indictment, but within the relevant limitations period. *Sledge v. State,* 953 S.W.2d 253, 256 (Tex. Crim.App.1997); *Thomas v. State,* 753 S.W.2d 688, 692 (Tex.Crim.App.1988). The child, who was nine years old and in the fourth grade at the time of trial, testified she had stopped going to "Uncle Mike's" house "a year or two" before, when she was in the third grade. Based on this evidence, the jury could have found that the offenses occurred before the trial and within the limitations period.

M.M. testified that Broderick had grabbed her private spot, that he had touched her when she had no clothes on, and that she had touched his private spot, which she described as hard and bony. M.M. then testified that he had shown her how to rub up and down on his "private spot" and that she had to wash her hands afterward.

Broderick contends that the evidence is insufficient because M.M. was a totally unreliable witness. Her unreliability, he says, is shown by her occasionally inconsistent answers to various questions and her inability to remember the alleged acts of her cousin as set out in the testimony that was excluded. The jury is the sole judge of the weight and credibility of the witnesses, and it may accept or reject any or all of the testimony of any witness. *See Heiselbetz v. State,* 906 S.W.2d 500, 504 (Tex.Crim.App.1995). The evidence is both legally and factually sufficient to support the verdict.

### Comment on Failure to Testify

Broderick next contends that the trial court erred by failing to order a mistrial when the prosecutor commented on his failure to testify. At one point in the prosecutor's argument, while discussing the things Broderick allegedly did with M.M., and discussing the file names found on Broderick's computer, the prosecutor said, "He says, 'Well, I changed my hard drive this summer.' But—he actually never said that."

A defendant's right not to be subjected to curable improper jury arguments is one of those rights that is forfeited by a failure to insist on it. *See Marin v. State,* 851 S.W.2d 275, 279 (Tex.Crim. App.1993). A defendant's failure to object to a jury argument, or his failure to pursue his objection to an adverse ruling forfeits his right to complain about an improper jury argument, unless the argument is of an incurable nature. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996). Broderick did not object to the argument, and he does not contend on appeal that the argument was incurable. Consequently, the point has not been preserved for review.

### Ineffective Assistance of Counsel

Broderick contends that his trial counsel was ineffective. The standard of testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and has been adopted for Texas constitutional claims in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App. 1986). To prevail on this claim, Broderick must have proven by a preponderance of the evidence that his counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000); *Rosales v. State,* 4 S.W.3d 228, 231 (Tex.Crim.App.1999).

To meet this burden, Broderick must prove that his attorney's representation fell below the standard of prevailing professional norms and there is a reasonable probability that, but for his attorney's deficiency, the result of the trial would have been different. *Tong v. State,* 25 S.W.3d at 712. Under this standard Broderick must prove that his counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. 2052.

Our review of counsel's representation is highly deferential. We indulge a strong presumption that counsel's performance falls within a wide range of reasonable representation. *Strickland v. Washington,* 466 U.S. at 687–88, 104 S.Ct. 2052; *Tong v. State,* 25 S.W.3d at 712. We will not second-guess through hindsight the counsel's strategy at trial, nor will the fact that another attorney might have pursued a different course support a finding of ineffectiveness. *Blott v. State,* 588 S.W.2d 588, 592 (Tex.Crim.App.1979). That another attorney, including Broderick's counsel on appeal, might have pursued a different course of action does not necessarily indicate ineffective assistance. *Harner v. State,* 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.).

Broderick points to several instances he claims demonstrate his counsel's ineffectiveness. The first is the failure to object to the prosecutor's alleged reference to Broderick's failure to testify.

Jury argument is proper if it falls within one of the following categories: (1) summation of the evidence; (2) reasonable deduction drawn from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Shannon v. State,* 942 S.W.2d 591, 597 (Tex.Crim. App.1996); *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Crim.App.1987).

Permissible argument does not include the right to comment on the failure of a defendant to testify. The failure of an accused in a criminal case to testify may not be the subject of comment by the prosecution, for such comment is in violation of the privilege against self-incrimination in Article I, § 10 of the Texas Constitution and the Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Cockerham v. State,* 729 S.W.2d 742, 746 (Tex.Crim.App.1987). Such a comment also violates a mandatory statute. Tex.Code Crim.Proc.Ann. art. 38.08 (Vernon 1979); *Montoya v. State,* 744 S.W.2d 15, 34 (Tex.Crim.App.1987).

To constitute an improper comment on the failure to testify, however, the objectionable comment, viewed from the jury's perspective, must be manifestly intended to be, or be of such a character that the jury would necessarily and naturally take it as, a comment on the accused's failure to testify. *Fuentes v. State,* 991 S.W.2d 267, 275 (Tex.Crim.App.1999); *Banks v. State,* 643 S.W.2d 129, 134–35 (Tex.Crim.App.1982). An indirect or implied allusion to the failure to testify does not violate a defendant's right to remain silent. *Id.* Calling attention to the absence of evidence which only the defendant could produce will result in reversal if the remark can only be construed to refer to the defendant's failure to testify and not the defense's failure to produce evidence.

The prosecutor's argument here is unclear. His initial comment could be read to suggest that he mistakenly thought Broderick had testified to a particular fact, and then realized he had not and corrected himself. He then proceeded to explain how the evidence showed that the hard drive on Broderick's computer had not been replaced. It is equally possible, however, that he was referring to Broderick's defensive contention rather than to his failure to testify.

Even if we assume that the comment was directed at Broderick's failure to testify, the comment was not a negative comment calculated to *injure* Broderick. *See Fuentes v. State*, 991 S.W.2d at 275. As this was not an improper comment, counsel was not ineffective for failing to object to it.

Broderick also contends that his counsel was ineffective because he did not object at the voir dire examination or conduct a meaningful inquiry of panelists at voir dire. Specifically, he argues that counsel erred by failing to object to statements describing the nature of the offense that were made by the prosecutor at the beginning of voir dire and for not questioning panel members who might be related to law enforcement officers.

■ The prosecutor's statements at voir dire that Broderick had committed the offenses were made in the context of explaining that the State was required to prove the allegations beyond a reasonable doubt. It was clear that these were the State's contentions of what it would prove and were not evidence. The statements were no more objectionable than would be a direct reading of the indictment to the panel. Counsel was not ineffective for failing to object to the prosecutor's allegations.

The record does not bear out Broderick's complaint that his counsel failed to question the panel members about their relationship with law enforcement personnel. Counsel questioned the jurors concerning their relationship to law enforcement personnel, and asked them in various ways whether those relationships would cause them to lean in favor of the prosecution or affect their independence as jurors.

Broderick contends that his counsel was ineffective for failing to object to evidence suggesting that he had been in possession of child pornography. An FBI agent who is an expert in computer reconstruction testified that he had examined the hard drive of Broderick's computer and that he had found no pornographic photographs. He also testified that he found approximately 100 deleted files whose file names remained on the computer after the contents of the files were deleted. He said he recognized a number of the file names as being descriptive of sexually explicit pictures, such as 05sucky.jpg, 12 & mom.jpg, 08sucky.jpg, sisbrother .jpg, tied.jpg, 10dildoe.jpg, and 8stretch.avi. He testified that he was specifically familiar with the last file because it portrayed a minor female having sexual intercourse with an adult male.

Broderick argues that his counsel should have objected to this evidence, and was deficient for failing to effectively cross-examine the witness and for failing to obtain his own expert witness to rebut the evidence. Broderick argues under this contention that this evidence was inadmissible evidence of an extraneous offense.

■ Although other objections could have been raised to the testimony about the possible contents of the hard drive, Broderick focused only on the single contention that they provided evidence of an extraneous offense. Thus, we limit our review to that argument. The general rule is that at the guilt/innocence phase of a prosecution, extraneous offenses are not admissible to show action in conformity with bad character. Extraneous offense evidence must have relevance apart from character conformity, i.e., it must make more or less probable an elemental fact or a fact that inferentially leads to an elemental fact or that tends to disprove a fact in the same way. Examples are to prove motive, opportunity, intent, preparation, blame, knowledge, identity, or absence of mistake or accident. TEX.R.EVID 404(b); *Montgomery v. State*, 810 S.W.2d at 386. Our review under this analysis is based on a determination of whether the trial court abused its discretion by failing to exclude the evidence of the other crime, wrong, or act.

■ The evidence shows that Broderick used his computer to make cards and play games with M.M. while she was visiting him. M.M. also testified that he showed her pictures of young girls engaged in sexual acts with male adults and told her she would have to do these things with him. This evidence shows Broderick's attempts to prepare the child to engage in sexual activity, and thus would also tend to show his intent to commit the crimes charged against him. Accordingly, the evidence was admissible, and objections on this basis would have been fruitless. TEX.R.EVID. 404(b).

■ Broderick also argues that an expert should have been retained to rebut statements by the State's expert about pornographic pictures and about Broderick's actions in accessing news groups and chat rooms specializing in preteen sex. There is nothing in the record to show that the statements could have been rebutted effectively, or that an expert would have been necessary or helpful to the defense.[2]

■ Broderick also contends that counsel was ineffective for failing to cross-examine M.M. about her inconsistent statement telling Sandra Broderick that "Uncle Mike" had put something in M.M.'s brother's rectum. Broderick has provided no discussion, authority, or argument under this point of error. M.M. was not questioned about and did not testify to these matters at trial. One of the last witnesses called by the defense, Sandra Broderick, testified that M.M. had told her that Broderick put something in her brother's rectum. We do not find counsel ineffective for failing to question M.M. about this matter.

### INADMISSIBLE EVIDENCE

■ Broderick contends, acknowledging that no objection was raised, that the admission of testimony suggesting that he had possessed child pornography was fundamental error requiring reversal. We disagree. We have already found that this evidence was not objectionable because it tended to prove intent and motive, as well as to show the context of the offense.

■ Broderick next contends that the trial court abused its discretion by allowing the State to introduce a duplicate of the hard drive on his computer rather than producing the original, citing TEX.R.EVID. 1002 as authority for his position. The rule provides, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." The State's computer expert testified that the copy made of the data encoded on the hard drive exactly duplicated the contents of that drive and explained the methods used in its creation. This meets the requirements of TEX.R.EVID. 1003, which provides, "A duplicate is admissible to the same extent as an original unless (1) a question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

For the reasons stated, we affirm the judgment.

---

2. When direct appeal does not provide an adequate record to evaluate a claim which might be substantiated through additional evidence gathered in a habeas corpus proceeding, a claim of ineffective assistance of counsel will properly be raised through habeas corpus, even if it had been previously rejected on direct appeal. *Ex parte Duffy*, 607 S.W.2d 507, 513 (Tex.Crim.App.1980), *quoted by Oldham v. State*, 977 S.W.2d 354, 363 (Tex.Crim. App.1998); *see also Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App.1997).