

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00173-CR

_____

DENNIS EUGENE ALLEN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Red River County, Texas
Trial Court No. CR01912

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

# OPINION

A jury convicted Dennis Eugene Allen of the aggravated sexual assault of his minor daughter, K.A. After entering a plea of "true" to the State's enhancement allegation, Allen was sentenced to fifteen years' imprisonment.[1] On appeal, Allen argues (1) that the evidence was legally insufficient to support his conviction, (2) that the trial court erred in concluding that Rebecca Peavy, the Executive Director of The Children's Advocacy Center of Paris (CAC), was the proper outcry witness, (3) that the trial court erred in allowing Peavy to remain in the courtroom during the testimony of the State's key witnesses, and (4) that the trial court improperly allowed irrelevant testimony regarding a case study involving pregnant teenagers.

We agree with Allen that the trial court erred both in determining that Peavy was the proper outcry witness and in exempting Peavy from the witness exclusion rule; however, we also conclude that the trial court's errors with respect to Peavy were harmless. We further find that the trial court did not abuse its discretion in admitting evidence relating to the case study and conclude that the evidence was legally sufficient to support Allen's conviction. Therefore, we affirm the trial court's judgment.

## I.     The Evidence Was Legally Sufficient to Support the Jury's Verdict

In evaluating legal sufficiency in this case, we must review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found,

---

[1] In this case, the State alleged that Allen penetrated K.A.'s sexual organ with his finger on or about May 13, 2012. Allen also appeals three other convictions of aggravated sexual assault of K.A. In cause number 06-13-00174-CR, Allen was convicted of intentionally or knowingly causing K.A.'s sexual organ to contact his mouth on or about May 13, 2012. In cause number 06-13-00175-CR, Allen was convicted of intentionally or knowingly penetrating K.A.'s sexual organ with his finger on or about October 8, 2008. In cause number 06-13-00176-CR, Allen was convicted of intentionally or knowingly causing K.A.'s sexual organ to contact his mouth on or about October 8, 2008.

beyond a reasonable doubt, that Allen committed the offense of aggravated sexual assault. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Here, the indictment alleged that, on or about May 13, 2012, Allen penetrated K.A.'s sexual organ with his finger. A defendant commits aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the sexual organ of a child younger than fourteen years of age by any means. TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (a)(2)(B) (West Supp. 2013).

Twelve-year-old K.A. testified that Allen had sexually abused her many times, beginning in the second grade. She told the jury that Allen's job required him to remain away from home

3

during the week, but that Allen "would normally mess with [her] on Saturdays or Sundays" when he returned home.

On May 13, 2012, the date of the incident for which Allen was prosecuted, K.A., who then lived with her father, Allen, her stepmother, Jeanette Allen, her brother, Tristan, and her stepbrother, Austin, was sitting on the couch in the living room playing a handheld video game after a day of swimming and playing in the backyard. K.A. testified (1) that Allen sat next to her on the couch, (2) that "[Allen] put his left hand . . . in [her] silky pants and then he started messing with [her]," (3) that Allen "was putting his fingers where [she] pee[s]," (4) that Allen's fingers were underneath her clothes and touched the inside of her vagina, (5) that Allen placed a couch pillow over her lap to hide the act, and (6) that Allen "moved his hand very fast out of [her] pants" when Jeanette came into the room.

K.A. made an outcry shortly after this May 13 incident. At trial, K.A. testified, "I told my Aunt Valerie [Williams] that my dad had been doing nasty stuff to me . . . [and] messes with me with his fingers." After Williams reported K.A.'s allegations, K.A. was taken to CAC to undergo a forensic interview conducted by Peavy. During this interview, K.A. reported the May 13 incident as well as several other instances of abuse to Peavy.

At trial, K.A. also testified about another incident of sexual assault that occurred when she was riding in Allen's truck. According to K.A., she and Allen were on the way to the store to pick up lettuce, tomatoes, and cigarettes when Allen offered to purchase gum for K.A. if she allowed him to digitally penetrate her. K.A. testified, "[Allen] put his right hand in my shorts and started messing with his middle finger where I pee."

4

According to Peavy, K.A. reported during her CAC interview that Allen had digitally penetrated her vagina (1) while she was sitting on the couch in the living room on or about May 13, 2012, and (2) while she was riding in Allen's truck. Peavy also testified that K.A.'s trial testimony was, at times, inconsistent with the information she provided during her CAC interview. For example, Peavy noted that K.A. could not remember the date she was sexually abused in Allen's truck at trial, but that she stated during her CAC interview that the truck incident also occurred on May 13, 2012, prior to the sexual assault that occurred in the living room. Peavy further testified that K.A. discussed additional instances of abuse during her trial testimony that were not mentioned during the CAC interview and that there were inconsistencies in K.A.'s recollection of details, such as the type of clothing that she was wearing during the incidents.

Dr. Matthew Cox, a pediatrician at the University of Texas Southwestern Medical School in Dallas, examined K.A. on May 31, 2012, but found no trauma or physical evidence of sexual abuse. Cox testified at trial that a lack of physical trauma was not uncommon among the victims of sexual abuse that he examined. Cox explained that penetration could occur without tearing of vaginal tissues and that any bruising or physical signs of sexual abuse might have already healed.

In his defense, Allen testified that he was never alone with K.A. and that he never sexually assaulted her. Jeanette also testified and attempted to cast doubt on the veracity of K.A.'s testimony. Jeanette claimed (1) that no one had been swimming in the pool on May 13,

5

(2) that Allen went to the store by himself on that day,[2] (3) that Allen did not go to the store for lettuce or tomatoes because she served hotdogs that day, (4) that she did not see K.A. and Allen sitting on the couch, and (5) that her mother had come over while she (Jeanette) was taking a bath and would have presumably witnessed, but did not witness, the abuse of K.A. while she was on the couch with Allen.[3]

Pointing to (1) inconsistencies in the record, (2) Cox's testimony that he found no physical evidence of sexual abuse, and (3) the testimony of his wife and her family members, Allen argues that the evidence was legally insufficient to support his conviction. Child complainants are "not expected to testify with the same clarity and ability as is expected of a mature and capable adult." *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd) (citing *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990)). However, the testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd).

Here, K.A.'s testimony established that Allen intentionally or knowingly penetrated K.A.'s sexual organ with his finger on or about May 13, 2012, as alleged in the indictment. The inconsistencies between the testimony of K.A., on the one hand, that of Allen, his wife, and her family members, on the other, as well as Cox's failure to find physical evidence of sexual abuse,

---

[2]Jeanette's father, Jerry Lester, testified that Allen drove by him in the truck on May 13, 2012, and that no one else was in the truck with him.

[3]Jeanette's mother, Mildred Lester, testified that she dropped by the house on May 13, 2012, while Jeanette was in the bath and that K.A. was not on the couch in the living room, but that she was still playing outside.

merely created fact and credibility issues which the jury resolved prior to entering its verdict.[4] Viewing the evidence in the light most favorable to the verdict, we find the evidence legally sufficient to support Allen's conviction for aggravated sexual assault. We overrule Allen's first point of error.

## II. The Trial Court's Erroneous Conclusion that Peavy Was the Proper Outcry Witness Was Harmless

Hearsay is not admissible at trial except as provided by statute or by the Texas Rules of Evidence. *See Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990) (per curiam). Article 38.072 of the Texas Code of Criminal Procedure establishes an exception to the hearsay rule, applicable in prosecutions of sexual offenses, for statements describing the offense made by a child victim "to the first person, 18 years of age or older, other than the defendant, to whom the child . . . made a statement about the offense." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) (West Supp. 2013).

During a pretrial hearing, Allen challenged the State's designation of Peavy as the proper outcry witness.[5] At the hearing, Peavy testified that K.A. had discussed Allen's digital penetration of her vagina during her CAC forensic interview. K.A., on the other hand, testified that she first told Williams that Allen had been "doing nasty things" including "put[ting] his fingers where I pee." Williams' affidavit, drafted on the day of Peavy's forensic interview with K.A., documented K.A.'s outcry. Williams averred (1) that K.A. "said [Allen] puts his fingers down where I pee," (2) that K.A. demonstrated Allen's movements with her hand, (3) that K.A.

---

[4]The trier of fact may believe all, some, or none of a witness' testimony because the fact-finder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

[5]Allen also obtained a running objection to the characterization of Peavy and her testimony as the outcry witness.

said this happened in the living room, (4) that K.A. said this type of contact happened "all the time," and (5) that the last time the contact happened was on May 13, 2012. After simply agreeing with the State's assertion that Peavy's testimony was reliable, the trial court overruled Allen's objection to the designation and utilization of Peavy as the outcry witness.

We review a trial court's decision to admit an outcry statement under an abuse of discretion standard. *Owens v. State*, 381 S.W.3d 696, 703 (Tex. App.—Texarkana 2012, no pet.) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). We will uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.* (citing *Divine v. State*, 122 S.W.3d 414, 420 (Tex. App.—Texarkana 2003, pet. ref'd)). Because there is no discretion in determining the applicable law, the trial court abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

To be admissible under Article 38.072, outcry testimony must be elicited from the first adult to whom the outcry is made. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Broderick v. State*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd). Admissible outcry witness testimony is not person-specific, but event-specific. *Broderick*, 35 S.W.3d at 73. To be a proper outcry statement, the child's statement to the witness must describe the alleged offense, or an element of the offense, in some discernible manner and must be more than a general allusion to sexual abuse. *Lopez*, 343 S.W.3d at 140; *Broderick*, 35 S.W.3d at 73 (citing *Thomas v. State*, 1 S.W.3d 138, 140–41 (Tex. App.—Texarkana 1999, pet. ref'd)).

8

On appeal, the State argues that K.A.'s statements to Williams were not an outcry because they amounted to nothing more than a general allusion to sexual abuse.[6] We disagree. K.A. told Williams that Allen digitally penetrated her vagina by "put[ting] his fingers down where I pee," demonstrated the abuse using her hands, identified the location of the abuse as her living room, identified the date of the incident as the Sunday before her outcry, and claimed that it had happened more than once.[7] K.A.'s statements to Williams establishing how, when, and where the offense alleged in the State's indictment occurred constituted an outcry for purposes of Article 38.072, and the fact that they were made to Williams made her the proper outcry witness in this case.[8]

Because we find that the trial court erred in failing to sustain Allen's objection to Peavy's designation as the outcry witness, we must next determine whether the error was harmful. *See* TEX. R. APP. P. 44.2. "The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if the appellate court, after examining the record as a whole, is reasonably assured that the error did not influence the jury verdict or had but a slight effect."

---

[6]The State also argued that, because Williams did not testify at trial, she must have been unavailable to testify. There is nothing in the record suggesting that Williams, with whom K.A. was residing at the time of trial, was unavailable.

[7]In cases where a child has been victim to more than one instance of sexual assault, it is possible to have more than one proper outcry witness. *Broderick*, 35 S.W.3d at 73. But before more than one outcry witness may testify, it must be determined that each outcry concerned different events or offenses and was not simply a repetition of the same event told to different individuals. *Id.*

[8]This Court has previously held that evidence of "how, when, and where" the offense occurred generally is sufficient to constitute an outcry statement. We have rejected the view that the details of "how, when, and where" are necessary to constitute a proper outcry statement. *Brown v. State*, 189 S.W.3d 382, 386 (Tex. App.—Texarkana 2006, pet ref'd.). Instead, we rely on the well-established rule that to be a proper outcry statement, the child's statement to the witness must describe the alleged offense in some discernible manner and must be more than a general allusion to sexual abuse. *Id.* at 386; *Eldred v. State*, No. 06-13-00128-CR, 2014 Tex. App. LEXIS 2460 (Tex. App.—Texarkana Mar. 5, 2014, no pet. h.).

9

*Broderick*, 35 S.W.3d at 74 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)). Likewise, admission of inadmissible evidence is harmless error if other evidence that proves the same fact that the inadmissible evidence sought to prove is admitted without objection at trial. *Id.* at 75.

Ordinarily, when hearsay evidence is admitted, the opposing party is denied the right to cross-examine the declarant. Here, K.A. testified, without objection, to the same facts that were contained in her outcry to Williams and in Peavy's trial testimony, and she was subject to cross-examination. As we previously determined, K.A.'s testimony alone was sufficient to convict Allen. Therefore, we are reasonably certain that the admission of Peavy's testimony did not influence the jury's verdict or had but a slight effect. *Id.* ("Because the same evidence was introduced though other testimony without objection, the trial court's error in admitting the statement was harmless."); *Dunn v. State*, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.). Accordingly, we find the trial court's error in allowing Peavy to testify as the outcry witness in this case was harmless. Allen's second point of error is overruled.

## III. The Trial Court's Error in Allowing Peavy to Remain in the Courtroom Was Harmless

On the State's request, the trial court determined that Peavy would be exempted from the witness sequestration rule and allowed to remain in the courtroom during the testimony of other witnesses in the case before offering her own testimony. Rule 614 of the Texas Rules of Evidence, the witness sequestration rule, prevents witnesses from tailoring their testimony to fit that of other witnesses and enhances the jury's ability to detect falsehood by exposing inconsistencies in testimony. *See* TEX. R. EVID. 614; *Caron v. State*, 162 S.W.3d 614, 618 (Tex.

10

App.—Houston [14th Dist.] 2005, no pet.); *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.). Rule 614 requires a trial court to exclude testifying witnesses from the courtroom unless the witness is (1) a party or the spouse of a party in a civil case, (2) an officer or employee of a legal entity named in the lawsuit who has been designated as the entity's representative for purposes of the trial, (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) the victim in a criminal case, unless the victim is to testify and the court determines that the victim's testimony would be materially affected by hearing other trial testimony. TEX. R. EVID. 614; *see Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.—Texarkana 2009, pet. ref'd). The party claiming an exemption under the witness sequestration rule bears the burden of showing that the exemption applies. *White*, 958 S.W.2d at 463.

Here, the State argued, over Allen's objection, that Peavy's presence in the courtroom while other witnesses were testifying was essential to the presentation of its case. Thus, the State had the burden to demonstrate that Peavy should be exempted from the witness sequestration rule on that basis. The trial court's determination that Peavy was, in fact, essential is reviewed for an abuse of discretion. *Bryant*, 282 S.W.3d at 161 (citing *Guerra v. State*, 771 S.W.2d 453, 475 (Tex. Crim. App. 1988)); *Caron*, 162 S.W.3d at 618 (citing *Cooks v. State*, 844 S.W.2d 697, 733 (Tex. Crim. App. 1992), *superseded on other grounds as stated in Bell v. State*, 415 S.W.3d 278, 281 (Tex. Crim. App. 2013)); *White*, 958 S.W.2d at 463.

A conclusory statement that the witness' presence is "essential and necessary" does not meet the burden to show that an exception under Rule 614 applies. *Bryant*, 282 S.W.3d at 161.

Besides pointing out that Peavy had been previously designated as an outcry witness in other cases tried before the trial court, the State made no argument at trial prior to the court's initial determination that Peavy should remain in the courtroom in this case. However, "[w]e may also consider [counsel's arguments] along with the actual testimony given [by the witness] if we review the court's later rulings on objections made when the witness actually testifies." *Id.* Here, Allen obtained a running objection to Peavy's testimony and again raised the issue prior to K.A.'s cross-examination.

In response to Allen's objection to Peavy's presence in the courtroom during K.A.'s cross-examination, the State argued that Peavy should be allowed to remain because she was an expert witness for the State. "[C]ourts have held that expert witnesses expected to testify in an expert capacity only, and not to the facts of the case, should typically be exempt so that they can form opinions based on more accurate factual assumptions." *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 119, n.4 (Tex. 1999). "But nothing in Rule[] 614 . . . suggests that *all* expert witnesses qualify for exemption." *Id.* at 118 (noting "expert witnesses who are also fact witnesses provide a closer case").

Here, the State argued that Peavy was "an expert in the difficulties that children have telling [others about sexual abuse] and the reasons that they mess up dates and have inconsistencies." However, while the State's proffered reason demonstrated Peavy's potential role as an expert, it failed to demonstrate that Peavy's expert opinion on these matters necessitated her presence in the courtroom, as required by Rule 614. Further, our review of Peavy's testimony confirms that her contribution to the case was to inform the jury of statements

12

made to her by K.A. during the forensic interview.  Therefore, we conclude that Peavy was a fact-witness—she formed no additional expert opinions based on K.A.'s trial testimony.

We find that the State failed to make the required showing that Peavy's presence in the courtroom was essential to the presentation of its case.  Therefore, the trial court erred in determining that Peavy was exempt from the sequestration rule and in allowing Peavy to remain in the courtroom during the testimony of other witnesses.  *Ladd v. State*, 3 S.W.3d 547, 566 (Tex. Crim. App. 1999).  We must now determine whether this error harmed Allen.

A "'violation of an evidentiary rule, . . . is non-constitutional [error] . . . and will be disregarded unless it affected the appellant's substantial rights.'" *Bryant*, 282 S.W.3d at 161 (quoting *Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005)).  Thus, "we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect." *Ladd*, 3 S.W.3d at 566; *see* TEX. R. APP. P. 44.2(b).

Prior to cross-examining K.A., Allen's counsel attempted to explain the harm in allowing Peavy to remain in the courtroom in the following colloquy:

> [N]ow the Court has heard testimony from the child on direct.  The child, quite, [sic] obviously has brought up different events, other events, changed some things and so forth.  That's for me to take up on my cross-examination; I understand that.  My problem is -- this goes back to Rebecca Peavy, who is now, you know, going to be our outcry witness.  The Court has heard -- and also has been allowed to sit in the courtroom, over my objection to be excluded from the rule. . . .
>
> Considering the fact that the child's testimony now is drastically different -- and what the outcry has been, I'm about to cross her and explore facts and circumstances of why that story has changed.

I think I'm greatly disadvantaged by Mrs. Peavy, who heard the initial outcry and is prepared to testify under one certain way, but now she's benefitting from this additional information and is going to be preparing herself for my cross-examination of her.

Rule 614 "prevents corroboration, contradiction, and the influencing of witnesses." *White*, 958 S.W.2d at 462. In deciding whether the error of allowing Peavy to remain in the courtroom was harmful, we consider (1) whether Peavy actually heard the testimony of other witnesses and (2) whether her testimony either contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness she heard. *See Bryant*, 282 S.W.3d at 161–62 (citing *Webb v. State*, 766 S.W.2d 236, 239–40 (Tex. Crim. App. 1989); *Wilson v. State*, 179 S.W.3d 240, 249 (Tex. App.—Texarkana 2005, no pet.)); *Cooks*, 844 S.W.3d at 733; *White*, 958 S.W.2d at 465. The appellant has the burden to demonstrate that the record supports a finding under both prongs. *Bryant*, 282 S.W.3d at 162. If both of these criteria are met, the court's decision to exempt Peavy from the Rule most likely resulted in harm. *See Cooks*, 844 S.W.3d at 733; *see Ladd*, 3 S.W.3d at 566; *Chisum v. State*, 988 S.W.2d 244, 251 (Tex. App.—Texarkana 1998, pet. ref'd); *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.). However, the main "question in assessing the harm of allowing [Peavy] to remain in the courtroom is whether [s]he was influenced in h[er] testimony by the testimony [s]he heard." *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005).

Peavy testified after hearing K.A. and Cox testify. Although Peavy was finally excused at the conclusion of her testimony and did not hear the testimony of the defense witnesses prior to taking the stand, Peavy's testimony corroborated K.A.'s allegation that Allen digitally penetrated K.A. in the living room on or about May 13, 2012. However, Peavy also admitted

14

that there were inconsistencies in K.A.'s testimony that could have been the result of the late hour and length of the CAC interview.  Peavy clarified that K.A.'s trial testimony was largely consistent with the CAC interview in that it matched K.A.'s descriptions of where and what type of sexual abuse occurred at Allen's hands.  It is true that Peavy's testimony did not relate merely to incidental matters and that it spoke to each of the elements the State was required to prove to establish Allen's guilt on the charged offense.

However, after reviewing the entire record, we have fair assurance that the error either had no influence on the jury's deliberations or had such a slight effect that it was imperceptible.  First, Peavy's testimony added nothing to the child's trial testimony with respect to the sexual assault that formed the basis of the State's indictment.  Second, K.A. was twelve years old at the time of trial, and her clearly articulated testimony establishing the elements of the offense was consistent, strong, and unwavering, even in the face of cross-examination.  Third, testifying favorably to Allen, Peavy admitted that it was possible that K.A. was lying due to the inconsistencies between her CAC interview and her trial testimony.  Allen's counsel emphasized this point during closing argument, leaving the jury to struggle with the issue of K.A.'s credibility.  Fourth, Allen's counsel, who was previously provided with and had reviewed a copy of the CAC interview, failed to suggest that Peavy's testimony was inconsistent with the child's CAC interview.  In fact, the State provided Allen with pretrial notice that Peavy would testify that K.A. told her that "'[Allen] messed with me with his fingers and did other stuff.'"

Peavy merely recalled the statements that K.A. made during the CAC interview, even if they were inconsistent with the statements by K.A. during trial.  Therefore, because Peavy's

15

testimony was limited to the statements by K.A. in the CAC interview, we cannot say that "[s]he was influenced in h[er] testimony by the testimony [s]he heard." *See id.* In light of the entire record, we find the trial court's error in exempting Peavy from the witness sequestration rule harmless. Allen's third point of error is overruled.

## IV. Admission of Evidence of Case Study Was Not Erroneous

Cox testified that he found no evidence of trauma or sexual abuse during his May 31, 2012, examination and further testified on direct examination as follows:

> Q.     If the allegations was [sic] that she had been both vaginally and anally penetrated by male sexual organ, by a penis, does it surprise you that you didn't see any injuries to either area?[9]
>
> A.     No it doesn't.
>
> Q.     Are there medical studies . . . and journals written about the fact that kids can be penetrated and not have any -- show any signs at all?
>
> A.     There are many studies published saying that, yes.
>
> Q.     Are there any that are particularly relied upon on [sic] your field?
>
> A.     There are several, absolutely.

Allen objected when the State attempted to question Cox about a case study "having to do with pregnant girls . . . having intact normal hymen." Cox testified that the peer-reviewed case study involved thirty-six pregnant females between the ages of twelve and seventeen. The females underwent genital examinations, and the study revealed that only two of the thirty-six

---

[9]The jury acquitted Allen of counts in the State's indictment alleging that he vaginally and anally penetrated K.A. with his sexual organ.

16

participants had findings definitive for past penetration, despite the obvious fact that all of the participants had previously had intercourse resulting in pregnancy.

Allen argued (1) that the evidence of the study was irrelevant because K.A. was younger than the participants of the study and was not pregnant; (2) that the study's probative value was substantially outweighed by the dangers of (a) unfair prejudice, (b) confusion of the issues, or (c) the propensity to mislead the jury by interjecting the issue of pregnancy; and (3) that the scientific evidence would not assist the trier of fact.[10] *See* TEX. R. EVID. 401, 403, 702. The trial court overruled Allen's objections.

A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). A trial court does not abuse its discretion if the decision to exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Marsh v. State*, 343 S.W.3d 475, 478 (Tex. App.—Texarkana 2011, pet. ref'd). We may not substitute our own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

One of Allen's objections was that Cox's testimony about the study was irrelevant and did not assist the jury in determining a fact in issue. *See* TEX. R. EVID. 401, 402, 702. Here, although the study involved pregnant females who were slightly older than K.A., we find that the

---

[10]Allen also lodged an objection suggesting that the admission of the study would somehow constitute inadmissible character evidence under Rule 404 of the Texas Rules of Evidence. *See* TEX. R. EVID. 404. Aside from simply mentioning the Rule, Allen has failed to argue the merits of his Rule 404 objection on appeal.

17

evidence was relevant. Cox was in the best position to explain to the jury why the genitalia of sexually abused victims often exhibit no physical signs of penetration. He tied the study to his conclusion that he was not surprised by the lack of physical evidence of penetration in K.A.'s genital examination. He further explained that, because oral, vaginal, and anal tissue is mucosal, it heals quickly and without scarring. He explained that the likelihood of discovering physical evidence of penetration diminishes with time; as the time between the abuse and the examination increases, the likelihood of discovering physical evidence decreases. Because Cox tied his testimony to the pertinent facts of the case, we find both that the evidence was relevant and that it assisted the trier of fact in understanding the lack of physical evidence of penetration. *See Casillas v. State*, No. 04-09-00227-CR, 2010 WL 1609697, at *4, *6 (Tex. App.—San Antonio Apr. 21, 2010, no pet.) (mem. op., not designated for publication) (discussing same study); *Whitfield v. State*, Nos. 05-05-01465-CR & 05-05-01466-CR, 2006 WL 3233886, at **1–2 (Tex. App.—Dallas Nov. 9, 2006, no pet.) (mem. op., not designated for publication) (discussing same study).[11] Therefore, we find no abuse of discretion in the court's decision overruling Allen's Rule 401 and 703 objections.

In determining whether the trial court erred in overruling Allen's Rule 403 objection to testimony about the case study, we balance the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence against any tendency of the evidence to suggest decision on an improper basis, any tendency of the evidence to confuse or distract the

---

[11]Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

jury from the main issues, any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and the likelihood that presentation of the evidence will consume an inordinate amount of time or repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).

Here, the jury was to determine whether Allen penetrated K.A.'s sexual organ. Cox relied on the case study to support his opinion that penetration of K.A.'s sexual organ could have occurred even in the absence of physical evidence of penetration at the time of her medical examination. The discussion of the study served to make the fact of penetration more probable in light of Cox's medical examination findings. Because Cox explained why there is often no evidence of penetration during his medical examinations, the study was somewhat redundant and reduced the State's need to refer to the study. *See id.* However, while the term "pregnancy" was placed in front of the jury, the jury was aware that K.A. was not pregnant. Further, Allen has identified no tendency of the evidence to suggest a decision on an improper basis. We also find that Allen failed to articulate a logical argument in the trial court to support either the conclusion that the study would confuse or distract the jury from the main issues or that the case study would be given undue weight. Therefore, we find no abuse of discretion in the court's decision overruling Allen's Rule 403 objection.[12]

Because we find no error in the trial court's decision to admit testimony relating to the case study, we overrule Allen's last point of error.

---

[12]Experts are allowed to use inadmissible facts or data to form an opinion if the information is of a type reasonably relied upon by experts in that field. TEX. R. EVID. 703. In some circumstances, the expert may disclose the underlying facts or data. TEX. R. EVID. 705(a) Allen did not object that the evidence was inadmissible hearsay or that the facts or data were not of the type reasonably relied on by experts in this field.

## V.  Conclusion

We affirm the trial court's judgment.

Jack Carter
Justice

Date Submitted:  May 5, 2014
Date Decided:  June 13, 2014

Publish