

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-24-00338-CR

JACKEY RAYLORN MARTIN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 33rd/424th District Court
Burnet County, Texas[1]
Trial Court No. 55285, Honorable J. Allan Garrett, Presiding

March 20, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Jackey Raylorn Martin, appeals from his conviction for aggravated sexual assault of a child.[2]  A jury found him guilty and, after he pleaded true to enhancement allegations, sentenced him to life imprisonment and a $10,000 fine.  In a

---

[1] This matter was transferred from the Third Court of Appeals in Austin pursuant to a docket equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE § 73.001.  We apply the Third Court's precedent to the extent it conflicts with our own.  *See* TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 22.021(a)(2)(B).

single issue, Appellant contends the trial court erred by designating the wrong outcry witness. Because Appellant failed to preserve his complaint and because any error was harmless, we affirm.

## BACKGROUND

At the time of the offense, Appellant lived with Gabby, her eight-year-old daughter, and the one-year-old child he shared with Gabby. Gabby's two other daughters visited on weekends.

One evening in March 2023, all four children were at the home. The older girls made pallets on the living room floor to watch television while the youngest played nearby. Gabby went to bed. Appellant told her he would stay in the living room to watch television with the girls.

About fifteen minutes later, one of the girls came into Gabby's bedroom alone. Startled, Gabby got up to see why no one was watching the child. As she rounded the corner into the living room, she saw Appellant pulling up his pants and walking away from where her daughters lay. She saw the eight-year-old victim peeking out from under the covers. When Gabby asked Appellant why he was pulling up his pants, he turned toward her, and she discovered he was sexually aroused. She asked if he had touched her daughter. He did not answer. He put on his shoes and left.

The victim began crying. Gabby asked what happened. The victim said Appellant had been doing inappropriate things to her and pointed to her vaginal area. Gabby noticed the victim's underwear was wet. When she examined the victim in the bedroom, she found redness near the vagina.

2

Law enforcement was contacted, and they directed Gabby to take the victim for a sexual assault examination.  During that examination, the victim was reluctant to speak but, when shown anatomical diagrams, pointed to the female genital area to indicate where she was touched and to the male genital to indicate what touched her.  The examiner found redness and abrasions to both the vaginal and anal areas.  Swabs were collected from the inner labia, mons, vulva, and anus.

The next day, a forensic interviewer met with the victim.  The victim was nervous at times, more open at others.  She eventually disclosed that Appellant had told her not to talk about something, and she wrote the word "private" to indicate what.  She said Appellant's private had gone inside her private and was moving inside.  She said this had happened "plenty of times."  She described the most recent incident as happening the night before.

The swabs from the examination were analyzed.  Male DNA was present in all four samples.  After investigators obtained a warrant for Appellant's DNA, testing showed he could not be excluded as the contributor.  The statistical likelihood that the DNA belonged to someone else was vanishingly small.[3]

---

[3] The analyst testified that Appellant could not be excluded as a contributor to the DNA profile.  The estimated frequency of occurrence ranged from 1 in 13 octillion to 1 in 250 nonillion, depending on the reference population.

Put differently, the probability that a random individual would share this profile is less than one in a quintillion times the population of the earth.  *See* U.S. Census Bureau, Census Bureau Projects U.S. and World Populations on New Year's Day, https://www.census.gov/newsroom/press-releases/2024/population-new-years-day.html (estimating Earth's population at approximately 8.09 billion on December 30, 2024).

Before trial, the court conducted an outcry hearing to determine whether Gabby, the sexual assault nurse examiner, or the forensic interviewer was the proper outcry witness. The court determined the forensic interviewer satisfied the statutory requirements. At trial, the jury heard from Gabby, the nurse examiner, the forensic interviewer, a DNA analyst, the victim, and law enforcement. The jury convicted Appellant as charged.

## ANALYSIS

Appellant contends the trial court erred in designating the forensic interviewer as the proper outcry witness. We hold his complaint fails at the threshold because he did not preserve it for appeal.

To preserve error, a party must make a timely objection at trial, and the complaint on appeal must correspond to the objection made below. TEX. R. APP. P. 33.1(a); *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). A preliminary ruling on the admissibility of outcry testimony under Texas Code of Criminal Procedure article 38.072 does not preserve error; the objection must be renewed when the evidence is offered. *Amador v. State*, No. 14-18-00684-CR, 2020 Tex. App. LEXIS 3833, at *11 (Tex. App.— Houston [14th Dist.] May 7, 2020, no pet.). Failure to object at the time evidence is offered waives the complaint. *Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002).

Appellant objected only during the preliminary hearing. He did not object when the forensic interviewer testified before the jury. He therefore failed to preserve his complaint for appeal.

Even assuming Appellant had preserved the issue, any error was harmless. *See* TEX. R. APP. P. 44.2(b). When the same evidence comes in elsewhere without objection, no harm results. *Broderick v. State,* 35 S.W.3d 67, 74–75 (Tex. App.—Texarkana 2000, pet. ref'd). Here, substantial evidence of penetration came in through other witnesses. The SANE nurse testified that the victim, when shown anatomical diagrams, pointed to the female genital to indicate where she was touched and pointed to the male genital to indicate what touched her. The physical examination revealed redness and abrasions consistent with penetration. DNA analysis of swabs taken from the victim showed Appellant could not be excluded as a contributor. Given this independent evidence, any error in the outcry designation did not affect Appellant's substantial rights.

We overrule Appellant's sole issue.

## CONCLUSION

We affirm the trial court's judgment.

Lawrence M. Doss
Justice

Do not publish.